Talbot, P.J.
Following a jury trial, defendant was convicted of one count of first-degree criminal sexual conduct (CSC), MCL 750.520b(1)(b)(ii); MSA 28.788(2)(1)(b)(ii), and two counts of second-degree CSC, MCL 750.520c(1)(b)(ii); MSA 28.788(3)(1)(b)(ii). The trial court sentenced defendant to concurrent terms of twenty to forty years’ imprisonment for the first-degree CSC conviction and eight to fifteen years’ imprisonment for each second-degree esc conviction. Defendant appeals as of right. We affirm.
i
Defendant first argues that the trial court erred in allowing the prosecutor to cross-examine a defense witness with evidence of a prior criminal charge for which he was acquitted, contrary to People v Falkner, 389 Mich 682; 209 NW2d 193 (1973). We disagree.
Complainant, who is learning disabled, testified that when she was fifteen years old, her uncle (defendant) fondled her on three separate occasions and digitally penetrated her once. Defense witness Robert Ganger, who was employed by defendant to investigate the allegations, testified that on the two occasions he spoke with complainant, she denied that defendant had either “touched [her] private parts” or “put his finger in [her] private parts.”
Following direct examination, the prosecutor moved to question Ganger concerning the fact that he *576 had been charged and acquitted of first-degree esc against his daughter, then a child under the age of thirteen. The prosecutor argued that evidence that Ganger had been through the entire criminal process and ultimately acquitted of a charge similar to that for which defendant was on trial was admissible to show that he may have colored his investigation and testimony in defendant’s favor. Over defense counsel’s objection, the trial court permitted the prosecutor to cross-examine Ganger regarding the prior charge. The trial court reasoned that the prior charge was not being offered to impeach Ganger’s credibility or to show his predisposition to commit CSC crimes. Instead, the trial court ruled that the evidence was being offered for the limited purpose of showing Ganger’s potential bias toward defendant. In addressing the issue of bias, the trial court stated:
[The prosecutor] certainly could argue on the one hand that the witness would be biased because he is employed, I would assume, by you [defense counsel] and your client [defendant]. She could also and apparently seeks to do so, argue that as a result of him being accused and acquitted of a crime which he claims he did not do of a very similar nature, that he is therefore biased in the Defendant’s favor and presumably would color his testimony to help the Defendant, another person who he may believe would be also wrongly accused of the same crime.
The prosecutor subsequently extracted testimony that Ganger had been charged, tried, and acquitted of first-degree CSC against his daughter and that he knew defendant had been charged with first-degree CSC when he spoke to complainant and her aunt during his investigation.
*577 In Falkner, the Supreme Court set forth a seemingly broad rule forbidding examinations concerning prior arrests and charges that did not result in conviction:
We hold that in the examination or cross-examination of any witness, no inquiry may be made regarding prior arrests or charges against such witness which did not result in conviction; neither may such witness be examined with reference to higher original charges which have not resulted in conviction, whether by plea or trial. [Id. at 695.]
In People v Bell, 74 Mich App 270, 284; 253 NW2d 726 (1977), this Court explained the rationale for the rule as follows:
[The Falkner Court] reasoned that since an individual may be charged or arrested for an offense of which he may never be tried, or tried and found not guilty, or the charge dismissed, the truth-seeking function of a trial and the protection of the individual would best be served if only convictions could be used for impeachment purposes. Convictions are specific and definite proof of past misconduct whereas charges or arrests are only inferences of misconduct.
Although the prohibition is phrased broadly, subsequent cases construing Falkner have limited its holding to instances where, as in Falkner, the prior arrests or charges are used for the purpose of “impeaching” a witness’ credibility. See, e.g., People v Yarbrough, 183 Mich App 163, 164-165; 454 NW2d 419 (1990); People v Westbrook, 175 Mich App 435, 437; 438 NW2d 300 (1989); Scott v Hurd-Corrigan Moving & Storage Co, Inc, 103 Mich App 322, 343; 302 NW2d 867 (1981); People v Torrez, 90 Mich App 120, 124; 282 NW2d 252 (1979); People v Harrington, 76 Mich *578 App 118, 121; 256 NW2d 52 (1977); see also People v Sanders, 394 Mich 439, 440; 231 NW2d 639 (1975); People v Rappuhn, 390 Mich 266, 270-271; 212 NW2d 205 (1973). Consequently, this Court has recognized an exception to the ostensibly strict holding where “the prior arrest is not used to directly impeach the witness but to bring out the witness’s bias or interest in the outcome of the case.” People v Hogan, 105 Mich App 473, 483; 307 NW2d 72 (1981); see also People v Bostic, 110 Mich App 747, 750; 313 NW2d 98 (1981). We note that the cases applying the bias exception have involved situations where the prosecutor or defense sought to introduce pending charges or arrests not yet resulting in conviction.[1] However, where an unproven charge is offered not to impeach the witness, but to show the witness’ bias or interest in the case, we find no compelling reason to distinguish between charges that have yet to be proved and those that the prosecution has either failed to prove or dismissed.
Our conclusion is consistent with federal and state authority emphasizing that the bias or interest of a *579 witness is almost always relevant to the substantive issue of witness credibility. In United States v Abel, 469 US 45, 52; 105 S Ct 465; 83 L Ed 2d 450 (1984), the United States Supreme Court stated:
Bias is a term used in the “common law of evidence” to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness’ like, dislike, or fear of a party, or by the witness’ self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness’ testimony.
Similarly, in addressing the constitutional right to confrontation, the Court explained:
Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness’ story to test the witness’ perceptions and memory, but the cross-examiner has traditionally been allowed to . . . discredit!] the witness. ... A more particular attack on the witness’ credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial and is “always relevant as discrediting the witness and affecting the weight of his testimony.” [Davis v Alaska, 415 US 308, 316; 94 S Ct 1105; 39 L Ed 2d 347 (1974), quoting 3A Wigmore, Evidence (Chadboum rev), § 940, p 775.]
See also People v Morton, 213 Mich App 331, 334; 539 NW2d 771 (1995) (the bias or interest of a witness is *580 always a relevant subject of inquiry on cross-examination); People v Lester, 232 Mich App 262, 273; 591 NW2d 267 (1998); People v Coleman, 210 Mich App 1, 8; 532 NW2d 885 (1995); and People v Mumford, 183 Mich App 149, 152; 455 NW2d 51 (1990) (the credibility of a witness is an issue “of the utmost importance” in every case; evidence of a witness’ bias or interest in a case is highly relevant to credibility); see also People v Kelly, 231 Mich App 627, 644; 588 NW2d 480 (1998) (“[a] limitation on cross-examination that prevents a defendant from placing before the jury facts from which bias, prejudice, or lack of credibility of a prosecution witness might be inferred constitutes denial of the constitutional right of confrontation”); People v Minor, 213 Mich App 682, 685; 541 NW2d 576 (1995) (“[a] witness’ motivation for testifying is always of undeniable relevance and a defendant is entitled to have the jury consider any fact that may have influenced the witness’ testimony”). Accordingly, we conclude that inquiry may be made on cross-examination regarding prior arrests or charges that did not result in conviction where the evidence is offered for the purpose of and is relevant to establishing a witness’ bias or interest.
Unlike in Falkner and its progeny, the prosecutor in this case did not offer evidence that was completely unrelated to defendant or to the charges for which he was on trial to impeach Ganger’s veracity.[2] *581 Instead, the prosecutor’s motion to question Ganger about the prior CSC charge came after the evidence established that defendant had hired Ganger to investigate the allegations and to interview complainant and that Ganger may have intimidated complainant in an attempt to prevent her from testifying against defendant.[3] In light of this evidence, the fact that Ganger had been accused and acquitted of a crime similar to that for which defendant was on trial was admissible to establish Ganger’s potential motive for conducting his investigation or slanting his testimony, unconsciously or otherwise, to help defendant. Therefore, we hold that the trial court was within its discretion in admitting the contested evidence for the limited purpose of showing Ganger’s bias or interest.
*582 n
Defendant next contends that the trial court abused its discretion in admitting, as excited utterances, statements complainant made to her mother in 1986 concerning a prior sexual assault defendant allegedly committed against complainant. We disagree. The decision whether to admit evidence is within the trial court’s discretion and will not be reversed absent an abuse of that discretion. People v Lukity, 460 Mich 484, 488; 596 NW2d 607 (1999).
At trial, complainant’s mother, Adeline Layher, testified that when complainant was five years old, she sent her into the house to retrieve a clothes basket. When complainant did not return, Layher went inside the house and found complainant naked and crying behind a door. Over objection, Layher testified that complainant told her immediately after the incident, both at home and at the hospital, that “her uncle had touched her in the wrong places,” but without specifying where she had been touched. Approximately one week after the incident, Layher took complainant to a therapist. Layher testified, again over objection, that with the aid of anatomical dolls, complainant stated that defendant had put his “thing” on her and pointed to her mouth, buttocks, and vaginal area.
MRE 803(2) permits the admission of statements “relating to a startling event or condition made while the declarant was under the stress of the excitement caused by the event or condition.” A statement is admissible under this exception if (1) there was a startling event and (2) the resulting statement was made while the declarant was under the excitement caused by that event. People v Smith, 456 Mich 543, 550; 581 NW2d 654 (1998); People v Straight, 430 *583 Mich 418, 423-424; 424 NW2d 257 (1988). While the time that passes between the event and the statement is important in determining whether the declarant was still under the stress of the excitement when the statement was made, the focus of the exception is on the declarant’s “lack of capacity to fabricate, not the lack of time to fabricate.” Smith, supra at 551.
We initially reject defendant’s assertion that the first requirement was not satisfied because there was no evidence of a startling event independent of the three hearsay statements, as required by People v Burton, 433 Mich 268, 294-295; 455 NW2d 133 (1989). Although there was no direct evidence that the assault occurred, the circumstantial evidence established that complainant did not return after her mother sent her into the house fully clothed to retrieve a clothes basket, that she was later found hiding behind a door naked and crying, that her mother immediately took her to the hospital because she was “crying and “real shaken,” and that doctors at the hospital determined that she had been molested. We hold that this strong circumstantial evidence was sufficient to establish that the sexual assault occurred, see People v Kowalak (On Remand), 215 Mich App 554, 559-560; 546 NW2d 681 (1996), and that it constituted a startling event. See Straight, supra at 425 (“[f]ew would quarrel with that conclusion that a sexual assault is a startling event”).
Defendant also argues that the third statement made during the therapy session could not be deemed an excited utterance because it was made one week after the alleged incident and was induced through questioning with the aid of anatomical dolls. We disagree.
*584 The evidence established that after complainant had twice told Layher that defendant had “touched her in the wrong places,” she took the child to therapy a week after the incident because the child was “emotional,” “really disturbed,” and nonresponsive. At the therapy session, complainant did not use technical terms to describe what defendant did, but merely stated that defendant had put his “thing” on her and pointed to her body parts. Unlike in Straight, cited by defendant, there is no record evidence to support his claim that Layher or the therapist repeatedly and emotionally asked complainant what happened until she answered.[4] These circumstances, combined with complainant’s young age, mental deficiency, and the relatively short interval between the assault and the statement, militate against the possibility of fabrication and support an inference that the statement was made out of a continuing state of emotional shock precipitated by the assault. See generally People v Garland, 152 Mich App 301; 393 NW2d 896 (1986); People v Draper, 150 Mich App 481; 389 NW2d 89 (1986); People v Soles, 143 Mich App 433; 372 NW2d 588 (1985). We therefore conclude that the trial court did not abuse its discretion in admitting the contested hearsay statements under the excited utterance exception to the hearsay rule.
m
Defendant next argues that the trial court abused its discretion in admitting evidence of the alleged 1986 sexual assault under MRE 404(b). Defendant contends that the proffered rationales for the admis *585 sion of this other-acts evidence were not in issue and that the unfair prejudice emanating from it outweighed its probative value. Again, we disagree. Pursuant to MRE 404(b), evidence of other crimes, wrongs, or acts is admissible if (1) the evidence is offered for a proper purpose rather than to prove the defendant’s character or propensity to commit a crime, (2) the evidence is relevant to an issue or fact of consequence at trial, and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. People v VanderVliet, 444 Mich 52, 55; 508 NW2d 114 (1993). Accord People v Crawford, 458 Mich 376, 385; 582 NW2d 785 (1998); People v Starr, 457 Mich 490, 496; 577 NW2d 673 (1998).
“In People v DerMartzex, 390 Mich 410; 213 NW2d 97 (1973), the Supreme Court held that evidence of other sexual acts between a defendant and his victim may be admissible if the defendant and the victim live in the same household and if, without such evidence, the victim’s testimony would seem incredible.” People v Sabin, 223 Mich App 530, 533; 566 NW2d 677 (1997); see also People v Puroll, 195 Mich App 170, 171; 489 NW2d 159 (1992); People v Dreyer, 177 Mich App 735, 737; 442 NW2d 764 (1989); People v Skinner, 153 Mich App 815, 823; 396 NW2d 548 (1986); People v Bailey, 103 Mich App 619, 624-625; 302 NW2d 924 (1980); People v Hammer, 98 Mich App 471, 474-475; 296 NW2d 283 (1980). Moreover, in Starr, supra at 501-502, the Court held that prior sexual acts between the defendant and his half-sister were admissible to rebut the defendant’s claim that the charges were groundless and fabricated by the victim’s mother.
*586 In the present case, complainant testified that the alleged instances of sexual abuse occurred while she and defendant were living with her grandmother (defendant’s mother) and that two of the molestations took place while family members were present in the apartment or sleeping in the same room. The prosecutor offered evidence of the prior assault, which allegedly occurred while complainant’s mother was around, to rebut defendant’s theory that complainant had fabricated the instant allegations, by showing that defendant was, in both instances, willing to risk assaulting complainant while other family members were nearby. Consequently, the evidence was offered for a proper purpose and was relevant to an issue of consequence at trial. See Starr, supra at 501-502; DerMartzex, supra at 414-415.
Further, after thorough review, we conclude that the trial court did not abuse its discretion in ruling that the probative value of the other-acts evidence was not substantially outweighed by the danger of unfair prejudice. The probative value of the prior uncharged offense was directly relevant to the victim’s credibility and the jury received an appropriate limiting instruction. People v Gibson, 219 Mich App 530, 534; 557 NW2d 141 (1996). Accordingly, the trial court was within its discretion in admitting this evidence. Starr, supra at 494.
IV
Finally, defendant argues that he was denied a fair trial because the prosecutors involved in the case intimidated complainant with threats of jail and perjury in order to gain favorable testimony from her. However, defendant failed to preserve this issue *587 because he did not raise it before the trial court. People v Grant, 445 Mich 535, 546; 520 NW2d 123 (1994); People v Stacy, 193 Mich App 19, 28; 484 NW2d 675 (1992). Therefore, our review is limited to determining whether defendant has demonstrated a plain error that affected substantial rights. People v Carines, 460 Mich 750, 763; 597 NW2d 130 (1999).
It is well settled that a prosecutor may not intimidate witnesses in or out of court. People v Clark, 172 Mich App 407, 409; 432 NW2d 726 (1988), citing People v Pena, 383 Mich 402, 406; 175 NW2d 767 (1970), and People v Crabtree, 87 Mich App 722, 725; 276 NW2d 478 (1979). However, a prosecutor may inform a witness that false testimony could result in a perjury charge. See People v Morrow, 214 Mich App 158, 165, n 5; 542 NW2d 324 (1995) (prosecutor properly informed recanting witness that failure to testify truthfully would subject her to criminal prosecution for perjury); People v Robbins, 131 Mich App 429, 439; 346 NW2d 333 (1984) (warnings to potential defense witness concerning possible perjury charges have been held to be proper); see also Hence v Smith, 49 F Supp 2d 547, 552 (ED Mich, 1999), quoting United States v Whittington, 783 F2d 1210, 1219 (CA 5, 1986) (“a prosecutor does not attempt to intimidate a defense witness by warning him or her ... of the consequences of testifying, where the prosecutor simply tells a witness that if he or she testifies falsely, such testimony would support a perjury indictment”). After a contextual review of the record, we conclude that the prosecutors did not intimidate complainant with improper threats, but merely informed her, apparently in response to her questions on the subject, that she could face perjury charges if she testified falsely. *588 Defendant has therefore failed to demonstrate a plain error that affected the outcome of the trial.
Affirmed.
Markey, J., concurred.

 See, e.g., Yarbrough, supra at 165 (pending charges against defense witness that arose out of the same incident for which the defendant was on trial); People v Hall, 174 Mich App 686, 690-691; 436 NW2d 446 (1989) (pending charges against prosecution witness);. Bostic, supra at 750 (defense witness’ arrest arising out of the same transaction for which the defendant was on trial); Hogan, supra at 483-484 (defense witness’ arrest on a bench warrant issued after he left court unannounced on the first day of the defendant’s trial); People v Oliver, 111 Mich App 734, 751; 314 NW2d 740 (1981) (defense witness’ arrest for failure to appear at the defendant’s trial when subpoenaed); People v Whitty, 96 Mich App 403, 417-418; 292 NW2d 214 (1980) (charges pending against prosecution witness); Torrez, supra at 124 (pending perjury charges against government informant); Harrington, supra at 121 (prior arrests of government informant to establish that he had made a deal with the police, and might still be subject to prosecution and hence had an interest in the outcome of the case).

 See, e.g., Falkner, supra at 686-687 (in prosecution for first-degree murder, defense witnesses were impeached with prior theft charges); People v Westbrook, 175 Mich App 435, 437; 438 NW2d 300 (1989) (in prosecution for larceny, defense witness was impeached with evidence of prior arrests for rape, attempted unlawful driving away an automobile, and unlawful driving away an automobile); People v Carpenter, 120 Mich App *581 574, 582-583; 327 NW2d 523 (1982) (in prosecution for armed robbery, defense witness was impeached with evidence of a prior weapons charge); People v Marshall, 73 Mich App 97, 99-100; 250 NW2d 557 (1976) (in prosecution for armed robbery, defense witness was impeached with evidence of prior unrelated arrests); People v Beebe, 70 Mich App 154, 161-162; 245 NW2d 547 (1976) (in prosecution for armed robbery and breaking and entering, the defendant was precluded from impeaching prosecution witness concerning the arrest and release from jail of another prosecution witness involving a charge unrelated to the case at bar).

 Both complainant and her aunt, who was present during each meeting, testified that complainant never denied defendant’s conduct as Ganger claims. Complainant also testified that Ganger asked her if she wanted to “send defendant to jail for the rest of his life because [of what] he did”; advised her that she could “just taire the fifth”; told her that “they gonna have to plug one of my hair from my head out and that I’m going to have to take a drug test”; and told her that if she had done certain things with her older boyfriend, like hugging him, she could go to jail. Similarly, complainant’s aunt testified that Ganger advised that if the matter were pursued, “things could get out of hand” such that defendant, his attorney, or the court could require complainant to undergo drug testing, and correlated complainant’s relationship with her boyfriend with “what defendant was doing with her.” Ganger either denied that he made the comments or stated that the witnesses had taken them out of context.

Straight, supra at 421, n 1.