# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

THOMAS GATICA III,

        Defendant-Appellant.

UNPUBLISHED
June 28, 2016

No. 326230
Genesee Circuit Court
LC No. 13-034350-FC

Before: MURPHY, P.J., and SAAD and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of racketeering, MCL 750.159*i*(1), armed robbery, MCL 750.529, five counts of felon in possession of a firearm (felon-in-possession), MCL 750.224f, five counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and four counts of bank robbery, MCL 750.531. The trial court sentenced defendant, as a fourth habitual offender, MCL 769.12, to 160 to 252 months' imprisonment for the racketeering conviction, 235 to 360 months' imprisonment for the armed robbery conviction, 36 to 60 months' imprisonment for each of the felon-in-possession convictions, 2 years' imprisonment for each of the felony-firearm convictions, and to 114 to 360 months' imprisonment for each of the bank robbery convictions. We affirm.

This case stems from a series of armed robberies, including several bank robberies, which took place from 2010 to 2013. Defendant was arrested after fleeing from the scene of a bank robbery with two accomplices and was charged with 25 counts including: one count of racketeering, four counts of armed robbery, four counts of bank robbery, eight counts of felon-in-possession, and eight counts of felony-firearm. Defendant was acquitted of nine counts, encompassing three of the armed robbery charges and six of the firearm-related charges tied to the rejected armed robbery counts. At defendant's trial, the prosecution presented evidence showing that defendant acted as the getaway driver in multiple robberies committed by his nephew, his two brothers, and a family friend.

Defendant first argues on appeal that he was denied due process when the prosecutor failed to reveal defendant's nephew's "complete plea agreement," thereby misleading the jury with respect to the nephew's interest in testifying and bolstering his credibility. We review this unpreserved argument for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). We have scoured the record and there is no indication of any actual plea agreement existing between defendant's nephew and the prosecutor at the time of the nephew's

-1-

testimony. At best, defendant's nephew had a reasonable expectation of leniency of unknown degree relative to the various charges pending against the nephew, which expectation resulted from communications between him and the prosecutor, and which needed to be and was disclosed to the jury, as it had a bearing on his personal interest in testifying and thus on his credibility. See MCR 6.201(B)(5); *People v Atkins*, 397 Mich 163, 173-174; 243 NW2d 292 (1976); *People v Bosca*, 310 Mich App 1, 32; 871 NW2d 307 (2015); *People v Layher*, 238 Mich App 573, 580; 607 NW2d 91 (1999).

On direct examination by the prosecutor, the nephew, after acknowledging that he was charged with racketeering and a number of armed robberies and bank robberies, agreed with the prosecutor's statement that he would receive "some type of deal after [his] testimony." On cross-examination, defendant's nephew testified with respect to an inculpatory proffer or statement that he had given authorities nearly a year earlier after having first denied any participation in the crimes. According to defendant's nephew, in relation to the proffer, there had been negotiations with the nephew's attorney about the nephew being released from jail and placed on a tether, being subjected to a single count of bank robbery, and being exposed to sentencing guidelines of 19 to 51 months. Defendant's nephew acknowledged that he had been released from jail and was on a tether, but he stated that no firm plea deal had been in place regarding the charges and sentencing. Moreover, during a discussion of the jury instructions, the prosecutor was adamant that defendant's nephew did not yet have a deal and that the last failed plea discussion had concerned "two bank robberies and a felony[-]firearm."

In sum, the jury was informed, as elicited by the prosecutor, that some level of leniency was going to be provided to defendant's nephew in exchange for his cooperation and testimony and that no finalized plea agreement was in place. The existing record does not belie those points. Further, on the basis of the cross-examination of the nephew, which was a bit muddled in regard to negotiations and the proffer, the jury was perhaps left with the impression that some sort of deal had been struck, encompassing a single count of bank robbery and a sentence within the range of 19 to 51 months. Such an impression would have been inaccurate given the record as a whole, yet it was to defendant's benefit. Overall, the jury was informed and understood that defendant's nephew had a personal interest in testifying and that a prosecutorial reward of some nature would flow from his testimony, bearing on his credibility. The record does not support a conclusion that the prosecutor engaged in any misconduct.[1]

Moreover, the overwhelming evidence of defendant's guilt would render any assumed prosecutorial misconduct harmless. Defendant cannot show the requisite prejudice, i.e., that the presumed misconduct affected the outcome of the lower court proceedings, nor did any misconduct result in the conviction of an actually innocent defendant or impact the fairness, integrity, or public reputation of the judicial proceedings independent of defendant's innocence. *Carines*, 460 Mich at

---

[1] According to the Michigan Offender Tracking Information System, defendant's nephew eventually pleaded guilty to two counts of bank robbery and received two years of probation. He was sentenced on June 24, 2015, which was approximately seven months after the conclusion of defendant's trial, strongly suggesting that the plea agreement had indeed been reached after the nephew's testimony at defendant's trial.

763. The evidence plainly established that the motor vehicles utilized in the robberies for which defendant was convicted were all directly tied to defendant, including the car used in the final bank robbery, which vehicle was driven by defendant as he fled the scene of that robbery with police in pursuit. During the flight in which defendant ran stop signs and stoplights, two of his accomplices exited the car and fled, and defendant eventually crashed the vehicle and was chased by police for several blocks on foot before being apprehended. Further, one of defendant's brothers, who was involved in the series of robberies and entered a plea, implicated defendant in the robberies. Defendant's other brother gave the police a statement implicating defendant in one of the bank robberies. Additionally, defendant's DNA was linked to a pair of black leather gloves connected to a 2010 bank robbery. Accordingly, even if the jury was informed that defendant's nephew had a deal at the time of his testimony comparable to the deal upon which he was eventually sentenced, which finds no basis in the record, he cannot establish any prejudice. Reversal is unwarranted.[2]

Last, defendant argues that he is entitled to have his convictions vacated because his right to a speedy trial was violated, where there was an approximately 20-month delay between his arrest and trial that was entirely attributable to the state and presumptively prejudicial. In *People v Rivera*, 301 Mich App 188, 193; 835 NW2d 464 (2013), this Court observed:

> Aside from the 180–day rule, a defendant's right to a speedy trial is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. The federal and state constitutions and Michigan statutory law guarantee criminal defendants a speedy trial without reference to a fixed number of days. In contrast to the 180–day rule, a defendant's right to a speedy trial is not violated after a fixed number of days. The right to a speedy trial is codified at MCL 768.1, which provides that "persons charged with crime are entitled to and shall have a speedy trial" and that the case be brought to "a final determination without delay except as may be necessary to secure to the accused a fair and impartial trial." Whether an accused's right to a speedy trial is violated depends on consideration of four factors: (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant. When the delay is more than 18 months, prejudice is presumed, and the prosecution must show that no injury occurred. When the delay is less than 18 months, the defendant must prove that he or she suffered prejudice. The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest. [Citations, quotation marks, and alteration bracket omitted.]

---

[2] We also reject defendant's inadequately stated and briefed argument that counsel was ineffective for failing to cross-examine defendant's nephew about his purported plea and for failing to object to the nephew's misleading and untruthful testimony relative to the plea. Again, there was no evidence of any finalized plea agreement at the time of the nephew's trial testimony. Therefore, defendant has failed to establish the factual predicate for his ineffective assistance claim and has not shown that counsel's performance was deficient. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). Furthermore, as discussed above, defendant cannot establish the requisite prejudice. *Id.*

Here, the delay between defendant's arrest and his trial was approximately 20 months, making it presumptively prejudicial. With respect to the reasons for the delay, some of the delay was attributable and must be charged to defendant, considering that he substituted counsel at one stage and subsequently expressly asked for and was granted a later trial date while awaiting transcripts of his brother's plea. See *People v Cain*, 238 Mich App 95, 113; 605 NW2d 28 (1999). Other reasons for the delay pertained to scheduling issues and judicial reassignment, which, although technically charged against the prosecution, are given a neutral tint and assigned minimal weight. *People v Waclawski*, 286 Mich App 634, 666; 780 NW2d 321 (2009). Additional reasons for the delay included the processing of a substantial amount of DNA evidence, ongoing plea negotiations relative to defendant's accomplices, and the sheer complexity and enormity of the case. Delays due to the complexity of a criminal case are legitimate and tolerable. *Cain*, 238 Mich App at 113; *People v Goode*, 106 Mich App 129, 132; 308 NW2d 448 (1981). This factor does not weigh in favor of either party.

In regard to defendant's assertion of the right to a speedy trial, he did not assert the right, likely because of the case's complexity and size and his own request for more time prior to trial.[3] Finally, with respect to the presumption of prejudice, the prosecutor has shown that no actual injury occurred to defendant. The record reflects that there was no prejudice to defendant's person by way of oppressive pretrial incarceration and, more importantly, no prejudice to his defense, as a result of the delay. *People v Williams*, 475 Mich 245, 264; 716 NW2d 208 (2006). Defendant makes no claim that because of the delay he was somehow unable to defend himself or lost access to exculpatory evidence. The fact that the delay may have allowed the prosecution to develop its case by turning defendant's accomplices against him does not constitute relevant prejudice for purposes of speedy-trial analysis. See *People v Holtzer*, 255 Mich App 478, 493; 660 NW2d 405 (2003) ("While a delay that impairs the defense must be taken most seriously, we do not equate an enhancement of the prosecution's case with the impairment of the defense.") (citation omitted). Reversal is unwarranted.

Affirmed.

/s/ William B. Murphy
/s/ Henry William Saad
/s/ Stephen L. Borrello

---

[3] We reject as meritless defendant's arguments that it was unnecessary for him to invoke the right to a speedy trial because the trial court took note of the case's slow progression and that the right was asserted when defendant presented a 180-day argument for bond. Indeed, when defendant requested bond on the basis of the 180-day rule, the prosecution indicated that it was ready for trial, while defendant stated that he was not ready for trial on the scheduled date, at which point the court set a later trial date.