# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
November 9, 2017

v

JAMES MARK WASHINGTON,

Defendant-Appellant.

No. 334512
Wayne Circuit Court
LC No. 16-002598-01-FC

Before: MURRAY, P.J., and FORT HOOD and GLEICHER, JJ.

PER CURIAM.

A jury convicted defendant of two counts of first-degree criminal sexual conduct (victim under 13/defendant 17 or older) (CSC-I), MCL 750.520b(2)(b); assault with intent to commit CSC involving penetration, MCL 750.520g; aggravated indecent exposure, MCL 750.335a(2)(b); and distributing sexually explicit material to a minor, MCL 722.675(1)(a), for sexually abusing his then 11-year-old daughter. He challenges the admission of certain evidence against him and the performance of his trial attorney. We discern no prejudicial error and affirm.

## I. BACKGROUND

BW was born in 2003 to defendant and his girlfriend, Brittani Calhoun. The two broke up when BW was two and defendant rarely saw his daughter thereafter. In the summer of 2014, defendant began visiting BW more often and took her for overnight weekend visits on three occasions. Defendant brought BW to the home he shared with his girlfriend.

Defendant took BW for a visit on the weekend of September 4, 2014. That Sunday, defendant delivered BW to the home of her grandfather, Darren Malone. Malone noticed that BW had a "weird" look on her face and was acting "agitated or irritated." Malone asked her what was wrong and BW initially indicated that all was well. Upon further questioning, BW told Malone that defendant had "pulled down her pants, pulled off her panties, and kissed her down there." Malone called Calhoun and asked her to come home. BW told Calhoun the same story and she called the police. Calhoun then took BW to the hospital but a rape kit was not completed because the doctors determined from BW's description that defendant did not actually penetrate her vagina.

A couple of weeks later, Calhoun and BW went to Kid's Talk for a forensic examination. At the facility, Calhoun showed Detroit Police Officer Elaine Caldwell a text message she had

received from defendant. Defendant had never paid child support in the past. However, he offered to pay Calhoun $150 each month if she did not report his crime. Officer Caldwell was very new to her position and failed to preserve this evidence. Three months later, Calhoun accidentally dropped her phone in water and the message was lost.

BW took the stand at trial and described the assault. On the Sunday of her last weekend visit with defendant, she and defendant were home alone while his girlfriend was at work. Defendant forced her upstairs and into his bedroom. Inside, defendant pulled down her pants and underwear and performed cunnilingus. BW tried to push defendant away but he persisted. Defendant then ordered BW to sit on his bed and he showed her a pornographic video on his phone. Afterward, defendant pushed her down on her back and tried to force his penis into her vagina. BW testified that she fought defendant off so he was unable to "stick it in." Defendant then flipped BW onto her stomach and tried to penetrate her anus, but BW again fended off his attack. During the assault, defendant ejaculated on the bed next to BW.

After the assault, defendant directed BW to take a shower and she complied. The two drove to meet defendant's girlfriend, returned to defendant's house to collect BW's bag, and drove to BW's grandfather's house to drop her off. Once defendant left, BW told her grandfather what had happened. Her grandfather summoned her mother and her mother called the police.

Ultimately, the jury convicted defendant as noted above. He now appeals his convictions.

## II. ADMISSIBILITY OF THE EVIDENCE

Defendant challenges the admission of Calhoun's testimony regarding the content of the text message he allegedly sent to Calhoun. He also contends that the court improperly admitted Malone's testimony regarding BW's statements when she returned home from defendant's house. Because defendant objected to the introduction of both the content of the text message and BW's statement to Malone, his challenges are preserved for our review. *People v Douglas*, 496 Mich 557, 574; 852 NW2d 587 (2014) (citation omitted).

"We review for an abuse of discretion a trial court's decision to admit or exclude evidence," and de novo any preliminary legal questions, *People v Mann*, 288 Mich App 114, 117; 792 NW2d 53 (2010), such as whether a statement constitutes inadmissible hearsay, *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003). Reversal of a criminal conviction on the basis of a trial court's erroneous evidentiary ruling is only necessary where the error prejudiced the defendant and resulted in a miscarriage of justice. MCL 769.26; *People v Snyder (After Remand)*, 301 Mich App 99, 111; 835 NW2d 608 (2013).

Defendant contends that the trial court erroneously permitted Calhoun to testify regarding the text message as the message was not preserved and could not be authenticated as required by MRE 901(a). Defendant's argument, and the trial court's reliance on this rule at trial, are misguided as the text message itself was never proffered at trial and therefore did not need to be authenticated. Instead, Calhoun testified about the content of the message and Officer Caldwell

testified that she saw it. The question is whether Calhoun's verbal reproduction of the text message's content was admissible.

Generally, "[t]o prove the content of a writing, . . . the original writing . . . is required." MRE 1002. MRE 1004(1) provides an exception: "The original is not required, and other evidence of the contents of a writing . . . is admissible if . . . [a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith." There is no record indication that Calhoun lost or destroyed the text message in bad faith. She testified that approximately three months after defendant's offense, she dropped her phone in the water. The phone was destroyed and its contents lost. Because the original was lost or destroyed, MRE 1002 does not preclude the admission of testimony regarding the contents of the text and Calhoun's testimony was admissible under MRE 1004(1). Although the trial court erred in relying on MRE 901(a), we will not reverse the trial court when it reached the right result albeit for the wrong reason. *People v Goold*, 241 Mich App 333, 342 n 3; 615 NW2d 794 (2000).

We also discern no reversible error in the admission of Malone's testimony regarding BW's statements to him when she returned from her visit with defendant. The trial court admitted this testimony under the excited utterance exception to the hearsay rule, MRE 803(2).

MRE 803(2) defines an excited utterance as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." "The rule allows hearsay testimony that would otherwise be excluded because it is perceived that a person who is still under the sway of excitement precipitated by an external startling event will not have the reflective capacity essential for fabrication so that any utterance will be spontaneous and trustworthy." *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998) (quotation marks and citation omitted). "[I]t is the lack of capacity to fabricate, not the lack of time to fabricate, that is the focus of the excited utterance rule." *Id*. at 551. The "primary requirements" for a statement to qualify as an excited utterances are "1) that there be a startling event, and 2) that the resulting statement be made while under the excitement caused by the event." *Id*. at 550.

BW did not spontaneously tell Malone what had happened to her. Rather, Malone noticed that BW was upset and asked her what had happened. BW initially asserted that nothing had occurred. Malone persisted stating, "Girl, you know you can talk to me about anything. I'm your Daddy."[1] "[W]hether a statement made in response to questioning should be excluded under MRE 803(2) depends on the circumstances of the questioning and whether it appears that the statement was the result of reflective thought." *Id*. at 553. In *People v Straight*, 430 Mich 418, 425-426; 424 NW2d 257 (1988), the Supreme Court held that statements made by a four-year-old victim one month after a sexual assault, immediately after a pelvic examination, and after repeated and emotional questioning by her parents were not excited utterances because it could not be determined whether the child was under the stress "caused by the event or condition" or by the stress caused by the medical examination and questioning. Generally, a

---

[1] Although Malone is BW's grandfather, he helped raise BW and she refers to him as her father.

child's young age and a short time span between the assault and statement militate against the possibility of fabrication. *People v Layher*, 238 Mich App 573, 584; 607 NW2d 91 (1999).

Little time elapsed between the sexual assault and BW's statement to Malone. While Malone questioned BW, the questioning was not intense. This was a close evidentiary question and the court acted within its discretion in admitting the evidence. See *People v Cameron*, 291 Mich App 599, 608; 806 NW2d 371 (2011). However, even if the admission was improper, the error would be harmless. BW took the stand and described the assault in great detail. She also recounted her statement to Malone. Therefore, relief would be unwarranted in any event.

## III. ASSISTANCE OF COUNSEL

In a supplemental brief filed in propria persona pursuant to Supreme Court Administrative Order No. 2004–6, Standard 4, defendant argues that his trial counsel was ineffective for failing to challenge the trial court's subject matter and personal jurisdiction and the validity of the criminal statutes under which he was prosecuted. As defendant did not move for a new trial or an evidentiary hearing, our review is limited to mistakes apparent on the existing record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

A criminal defendant has the fundamental right to the effective assistance of counsel. *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984). To establish ineffective assistance, the defendant must show that "counsel's performance fell below the objective standard of reasonableness under the prevailing professional norms," and "there is reasonable probability that, but for the counsel's error, the result of the proceeding would have been different." *People v Toma*, 462 Mich 281, 302-303; 613 NW2d 694 (2000).

Defendant provides no factual support whatsoever and almost no applicable legal support for his claims. Defendant simply argues that the trial court lacked subject matter and personal jurisdiction, and calls into question the validity of the criminal statutes under which he was prosecuted. "[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]" *People v Hoag*, 460 Mich 1, 6, 594 NW2d 57 (1999). Defendant failed to meet his burden, but we will briefly address his claims of error.

Subject-matter jurisdiction "is the right of the court to exercise jurisdiction over a class of cases, such as criminal cases[,]" and "is presumed unless expressly denied by constitution or statute." *People v Goecke*, 457 Mich 442, 458; 579 NW2d 868 (1998) (quotation marks and citations omitted). "Subject-matter jurisdiction concerns a court's abstract power to try a case of the kind or character of the one pending and is not dependent on the particular facts of the case." *People v Lown*, 488 Mich 242, 268; 794 NW2d 9 (2011) (quotation marks and citations omitted). The circuit court plainly had jurisdiction to hear and try criminal cases. MCL 600.601; MCL 767.1. Accordingly, there was no challenge for defense counsel to raise.

Personal jurisdiction vests "in the circuit court upon the filing of a return of the magistrate before whom the defendant waived preliminary examination, or before whom the defendant had been examined." *Goecke*, 457 Mich at 458 (quotation marks and citations omitted). In personam jurisdiction vested in the circuit court subsequent to defendant's preliminary examination on March 28, 2016. Once again, there was no ground for objection.

Defendant's challenge to the constitutionality of the statutes under which he was charged and convicted is convoluted and confusing. However, it appears that defendant contends that the statutes cannot be upheld because they did "not have any implementing regulation." "Statutes are presumed to be constitutional, and courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *People v McDonald*, 201 Mich App 270, 273; 505 NW2d 903 (1993). And the Legislature is free to enact legislation defining criminal acts without a directive from the federal government.

We affirm.


/s/ Christopher M. Murray
/s/ Karen M. Fort Hood
/s/ Elizabeth L. Gleicher