*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

ADAM CHRISTOPHER SHENDAJ,

Defendant-Appellee.

UNPUBLISHED
January 06, 2025
10:35 AM

No. 370866
Macomb Circuit Court
LC No. 2022-000972-FC

Before: BORRELLO, P.J., and N. P. HOOD and YOUNG, JJ.

PER CURIAM.

Defendant-Appellee, Adam Christopher Shendaj, was charged with solicitation of murder, MCL 750.157b(2). The prosecution appeals by leave granted[1] the trial court order denying the its motion to use preliminary-examination testimony at trial. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Shendaj was incarcerated in Macomb County Jail on a separate criminal sexual conduct ("CSC") allegation when he met two inmates, Brandon Williams and Nicholas Pastorelli. According to Williams and Pastorelli, Shendaj solicited them to murder the complainant ("TP") in his CSC case. Shendaj was charged with this solicitation, and Pastorelli and Williams testified at Shendaj's preliminary examination.

Their testimony, taken together, established that at first, Shendaj lied to Pastorelli and Williams about why he was in jail. He eventually confessed that he had been charged for CSC involving TP. Shendaj explained that he was overwhelmed by his situation and that he needed TP to be dealt with. Williams and Shendaj discussed the plan to kill TP before talking about it with Pastorelli. The plan was for Williams to give TP Xanax laced with fentanyl. It was decided that

---

[1] *People v Shendaj*, unpublished order of Court of Appeals, entered May 30, 2024 (Docket No. 370866).

Pastorelli and Williams would be paid $1,000 up-front and an additional $5,000 after TP was killed.

Shendaj gave information to Jahnna Connor, Williams' girlfriend at the time, to set up a Cash App account.[2] Connor purchased items from commissary for Williams with the money from Shendaj to begin the payment process.

Williams sent multiple messages to officials in jail once Shendaj offered him and Pastorelli money. Williams met with lead detective, Detective Anthony Pascaretti of the Macomb County Sheriff's Office, and told him about the plan to kill TP. Detective Pascaretti met with the officers assigned to Shendaj's CSC case, viewed Cash App screenshots from Connor, and subpoenaed Shendaj's bank account. Detective Pascaretti had Williams wear a wire and listened in on his conversations with Shendaj discussing the plan to kill TP. In one recorded conversation, Shendaj and Williams discussed how Shendaj wanted TP gone, the payment, and drugs. During Williams' preliminary-examination testimony, defense counsel objected to continuing with the examination because he had not received the complete discovery of texts, recorded calls, and other transactions. He only received a select few of each. While the trial court agreed that the defense was entitled to prompt discovery, the court also declined to delay the preliminary examination. After testimony from Williams, Pastorelli, and Detective Pascaretti, Shendaj was bound over.

Shendaj's trials for CSC and solicitation were merged. The prosecution filed a notice of intent to use Williams' and Pastorelli's preliminary-examination testimony because they would not be available at trial. Defense counsel sought to preclude this testimony. The prosecution renewed its motion and defense counsel moved to preclude the testimony again. The trial court denied the prosecution's motion over concerns that Shendaj's right to confront witnesses against him would be violated.

The prosecution thereafter filed an application for leave to appeal the exclusion of Williams' preliminary-examination testimony to this Court. Leave was granted, and this appeal followed. *People v Shendaj*, unpublished order of Court of Appeals, entered May 30, 2024 (Docket No. 370866).

## II. DISCOVERY

Defense counsel argues in this Court that a Confrontation Clause issue arises out of the minimal discovery turned over by the prosecution in advance of preliminary examination, which in turn compromised the ability to cross-examine the witnesses. We start by addressing our understanding of the incomplete discovery.

On the first day of preliminary examination, Pastorelli was called as the only witness. The prosecution was seemingly unable to get Williams and the detective to court on the day scheduled for preliminary examination. Given the absent witnesses, defense counsel opposed bifurcating the preliminary examination and moved to dismiss Shendaj's charges. The trial court denied that

---

[2] Cash App is a financial services platform where users can send and receive money. Cash App, *About* <https://cash.app/> (accessed December 3, 2024).

motion. It is likewise clear on day one of the preliminary examination that discovery was not complete. Because the only testimony taken on the first day of the preliminary examination was Pastorelli's, and the prosecutor does not appeal the exclusion of Pastorelli's testimony at trial, we focus more on the second day of the preliminary examination.

Twenty-one days later, the second day of preliminary examination was held. Defense counsel began that hearing by saying that he still had not received "text messages and phone calls." He expounded upon this request, saying Shendaj and Williams both had access to tablet devices while incarcerated and the State of Michigan was in receipt of complete records from those devices, as well as recordings of video voice calls and traditional phone calls. Defense counsel did not have that discovery and added that the materials he had received were incomplete conversations. For example, some materials were a message sent by Williams but no response to give context. Without complete discovery, defense counsel argued, "I don't know what could be used as a possible defense or even as possible prosecution evidence if I don't get to look at everything." Defense counsel went on to say "I'm just getting an end result of again what they determine to be relevant for this particular investigation."

The prosecution acknowledged that all materials had been "downloaded and given to the discovery unit" but were not yet available. The prosecution clarified what had been turned over: "text messages that the detective pulled" and "three videos" and "three phone calls, which are the only three that exist." Detective Pascaretti stated that defense counsel had gotten "everything that was initially examined by myself when I was investigating the case." The prosecution also noted that several messages sent by Williams never received a response, so there were some that looked like incomplete conversations but were, in fact, complete. The trial court denied a continuance to complete discovery and continued with the exam.

In summary, the prosecution did not have its witnesses ready for the first day of preliminary examination but was granted a continuance of three weeks. Defense counsel was not afforded complete discovery but was not granted any continuance for the prosecution to complete it, even after the prosecution acknowledged that it had all the discoverable materials in its possession, and even after complete discovery was not turned over in the course of the prosecutor-requested three-week continuance.

We do not have access to the discovery materials that were not afforded to defense counsel before the preliminary examination, but we can glean some information on its materiality from the record. First, appellate defense counsel conceded that the evidence was not pertinent to Shendaj's bind over. Second, both parties seem to agree that the evidence goes toward Williams' credibility. And, finally, while the trial court did not clearly make a finding with respect to its materiality, the court at one point stated that the missing discovery was not "necessary" but "[i]t gives context." The trial court also acknowledged that the additional evidence was "something that can be utilized by defense counsel in the exploration of the credibility of the witness" and that Williams was "deceptive and that is something that clearly . . . can be utilized by defense counsel." We also know that while the materiality of the missing discovery may not be entirely clear on this record, it *is* clear that it was substantial in volume. At the preliminary examination, defense counsel was afforded five pages of discovery. Afterward, defense counsel went from 53 text messages to 1,200 messages and from 3 phone calls to 58 phone calls. This turnover happened very shortly after

-3-

preliminary examination indicating that perhaps, if even delayed one week, defense counsel could have proceeded with complete discovery.[3]

## III. ANALYSIS

The prosecutor argues that the preliminary-examination testimony of an unavailable witness, Williams, should be admitted because the trial court erroneously precluded the testimony on the basis of the Confrontation Clause. We agree.

## A. STANDARDS OF REVIEW

This Court will not disturb a trial court's decision to admit or preclude evidence unless there is an abuse of discretion. *People v Douglas*, 496 Mich 557, 565; 852 NW2d 587 (2014). An abuse of discretion occurs when a trial court "chooses an outcome that falls outside the range of principled outcomes." *Id*. (quoting *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013)). When the decision to admit or preclude evidence involves a question of law, review is de novo. *People v Clark*, 330 Mich App 392, 415; 948 NW2d 604 (2019).

## B. CONFRONTATION CLAUSE AND CROSS-EXAMINATION

The prosecution contends that because Williams was unavailable for trial and Shendaj was able to adequately cross-examine Williams during the preliminary examination, there is no violation of the Confrontation Clause. The prosecution also argues that Williams' prior testimony is admissible hearsay because Williams is unavailable, his prior testimony was given at a hearing, and Shendaj had a similar motive and opportunity to develop Williams' testimony at the preliminary examination. Thus, the circuit court abused its discretion in withholding the testimony. We agree.

The constitutions of the United States and the state of Michigan guarantee that criminal defendants have the right to confront the witnesses against them. US Const, Am VI; Const 1963, art 1, § 20; *People v Garland*, 286 Mich App 1, 10; 777 NW2d 732 (2009). Testimonial out-of-court statements will only be admissible against a criminal defendant if the declarant is unavailable at trial and the defendant had a prior opportunity to cross-examine the declarant. *People v Sardy*, 318 Mich App 558, 563-564; 899 NW2d 107 (2017) (A declarant is unavailable for Confrontation Clause purposes if they are not present and able to explain their prior testimony at trial). A statement is testimonial if it is a "solemn declaration" made to establish a fact. *People v Nunley*, 491 Mich 686, 698; 821 NW2d 642 (2012) (citation omitted). If an objective witness could reasonably believe that a statement could be used at a later trial, it is testimonial. *Crawford v Washington*, 541 US 36, 52; 124 S Ct 1354; 158 L Ed 2d 177 (2004).

The Confrontation Clause guarantees an opportunity for effective cross-examination, but not to whatever extent or in whatever way wished. *Sardy*, 318 Mich App at 564. The trial court may impose reasonable limits on cross-examination, but should not significantly limit its scope or

---

[3] The trial court judge noted this and also put on the record his belief that the preliminary examination should not have gone forward until discovery was turned over in full.

nature. *California v Green*, 399 US 149, 166; 90 S Ct 1930; 26 L Ed 2d 489 (1970); *People v Willis*, 322 Mich App 579, 591; 914 NW2d 384 (2018). A cross-examination is sufficient if the party whom the testimony is offered against had an opportunity to attack a witness' credibility, "possible biases, prejudices, or ulterior motives," or had similar motives. *Davis v Alaska*, 415 US 308, 316; 94 S Ct 1105; 39 L Ed 2d 347 (1974); *People v Layher*, 238 Mich App 573, 579; 607 NW2d 91 (1999). A party has a similar motive and opportunity to develop the testimony if: (1) the party had a similar interest in proving or disproving a similar issue, (2) the nature of the proceedings, such as the stakes and burden of proof, are similar, and (3) the party actually undertook cross-examination. *People v Farquharson*, 274 Mich App 268, 278; 731 NW2d 797 (2007). These factors are not exhaustive. *Id*.

To begin, the parties do not dispute that Williams is an unavailable witness. Williams is unavailable for purposes of the Confrontation Clause because he will not be present at trial and cannot explain his prior statements. *Sardy*, 318 Mich App at 564. Williams was served a subpoena at his home before the initial trial date of November 7, 2023. Williams did not respond. He was held to be unavailable again at the final pretrial conference.

Second, Williams' prior statements made at the preliminary examination were testimonial. Williams made statements for the purpose of proving facts: that Shendaj had approached him and Pastorelli with a plan to kill TP. Williams was being questioned by two attorneys in a courtroom in front of a judge. An objective witness at the preliminary examination could reasonably believe that statements made by Williams would be available for use at a later trial. *Crawford*, 541 US at 52. The prosecution intended to use Williams' prior statements as substantive evidence to prove that Shendaj solicited Williams and Pastorelli to murder TP. The prosecution argues that the prior testimony is necessary context to the audio recording of Williams and Shendaj discussing the plan to murder TP. Williams' statements are testimonial and offered for the truth of the matter asserted, and thus, the Confrontation Clause applies. *People v Washington*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 165296); slip op at 7.

At issue is whether the cross-examination of Williams by defense counsel at the preliminary examination was sufficient for the purposes of the Confrontation Clause. Shendaj contends that the cross-examination of Williams was ineffective because full discovery was not provided beforehand. Defense counsel was not able to question Williams during the preliminary examination on statements made in the texts and calls that he had not yet received. Defense counsel argued that Williams' testimony regarding the $1,000 payment from Shendaj to kill TP conflicted with Williams' texts to Connor about helping Shendaj with his finances. Defense counsel also argues that Williams' testimony about him and Shendaj initially calling Connor to discuss paying his bills contradicted texts that indicated that only Williams told Connor how Shendaj's money should be spent.

Unquestionably, defense counsel was not able to cross examine Williams on all matters without complete discovery. However, to avoid a confrontation clause violation, defense counsel need only actually undertake cross-examination. *Farquharson*, 274 Mich App at 278. Defense counsel did. The circuit court acknowledged as much. Defense counsel was able to complete 45 transcript pages of cross examination in which defense counsel was able to raise the issue of Williams' credibility by asking about his prior convictions for fraud, getting Williams to admit that he had lied in his texts to Connor, exploring Williams' personal bias against Shendaj, and his

cooperation with the prosecution in exchange for a lowered bond.  And, it is not entirely clear that Williams' later-received text messages do conflict with the testimony he gave, especially since he stated that he lied to Connor via text.  In short, Shendaj has not explained how introduction of the additional text messages would have made the scope of cross-examination, and thus the motive of the hearing, different.  We pause to recognize here that the State of Michigan had additional information that it failed to timely disclose to defense counsel and now the onus is on Shendaj to essentially prove some form of prejudice.

Nevertheless, we have a record wherein appellate counsel concedes this testimony was not relevant to the bindover.  And we also know that meaningfully impeaching a witness's credibility *is* relevant to bindover.  See *People v Anderson*, 501 Mich 175, 189; 912 NW2d 503 (2018) (holding that a magistrate's refusal to bind over a defendant because the complainant's testimony was not credible was not outside the range of principled outcomes).  So, at the very least, the impeachment evidence was not of sufficient materiality to undermine the bindover.  And in the trial court and again here, appellate counsel argues that the incomplete discovery foreclosed the opportunity for "meaningful" cross-examination, but that is not the confrontation clause standard.

Instead, at issue is whether Shendaj had a similar motive and opportunity to develop the testimony of Williams at the preliminary examination as he would have at trial.  *Farquharson*, 274 Mich App at 278.  Shendaj must have had a similar interest in proving the bias and lack of credibility of Williams.  *Id.*  The preliminary examination was conducted for the purpose of binding Shendaj over to the circuit court.  Shendaj would have an interest in discrediting Williams as one of the witnesses so that there would be insufficient evidence for him to be bound over.  Shendaj would have a similar interest in showing Williams' bias and lack of credibility at trial.  Doing so could prevent a jury from believing Williams and thus, not finding Shendaj guilty beyond a reasonable doubt.  This factor favors allowing Williams' preliminary-examination testimony to be admitted at trial.

The nature of the proceedings, such as the stakes and burden of proof, must also be similar. *Farquharson*, 274 Mich App at 278.  The preliminary examination took place in a courtroom, in front of a judge, with attorneys for the prosecution and defense.  The witnesses testified under oath and were subject to questioning from the prosecution and defense counsel.  These elements hold true for a trial as well.  However, the stakes and burden of proof vary between the preliminary examination and the trial.  At the preliminary examination, there had to be probable cause to bind Shendaj over to circuit court.  *People v Plunkett*, 485 Mich 50, 57; 780 NW2d 280 (2010).  The trial will require that Shendaj be proven guilty beyond a reasonable doubt for him to be convicted. *People v McGhee*, 268 Mich App 600, 622; 709 NW2d 595 (2005).  This factor weighs against allowing Williams' preliminary-examination testimony to be admitted but overall, it seems clear from binding caselaw that Williams' preliminary examination testimony was admissible.

However, this case relied heavily on the testimony of "jailhouse informants" who are "notoriously unreliable."  Note, *Lies Behind Bars: An Analysis of the Problematic Reliance on Jailhouse Informants*, 98 Wash U LR 257, 261 (2020).  "Jailhouse snitch testimony is arguably the single most unreliable type of evidence currently used in criminal trials."  Article, *Abolishing Jailhouse Snitch Testimony*, 49 Wake Forest LR 1375 (2014).  As a result, additional impeachment

evidence against a jailhouse informant is not to be taken lightly. At oral argument in this Court the prosecutor acknowledged that there may be a situation where the post examination discovery materials would so meaningfully alter the cross-examination that it cannot be said the motive of the examination remains the same.

From this record, we cannot conclude that this is that case. Though the *Farquharson* factors are not exhaustive, they demonstrate that Shendaj had a similar motive and opportunity to develop Williams' testimony at the preliminary examination. Therefore, Williams' prior testimony falls within a hearsay exception and is admissible.

## IV. CONCLUSION

We reverse and remand for further proceedings consistent with this opinion. This opinion does not foreclose the trial court's ability to impose discovery sanctions on the state, so as to avoid giving the government a pass for its failure to adequately perform its simplest task—discovery. Likewise, recognizing that trial work is dynamic, this opinion does not limit or foreclose Shendaj's ability to raise other related issues on direct appeal (if necessary) depending on how exactly this and other evidence is presented at trial. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Noah P. Hood
/s/ Adrienne N. Young