PER CURIAM.
The Due Process Clause of the Fourteenth Amendment affords an accused a constitutional right to present witnesses in his own defense. Substantial government interference with a defense witness’s choice to testify violates this right.
Here, the interference involved a prosecution witness, Dennis Hoskins. Minutes after Hoskins agreed to testify at defendant Devaun Lopez’s trial, the prosecutor threatened Hoskins that deviation from his preliminary-examination testimony would result in prosecution for perjury and life imprisonment on conviction. Hoskins subsequently invoked his Fifth *707 Amendment privilege, and his preliminary-examination testimony was presented to the jury. The trial court acknowledged that Hoskins refused to testify because he felt “threatened” by the prosecutor. Lopez contends that because the prosecutor’s conduct procured Hoskins’s unavailability, the prosecutor was precluded from relying on an exception to the hearsay rule, MRE 804(b)(1), to support the introduction of Hoskins’s former testimony.
Our Supreme Court has forcefully condemned pros-ecutorial intimidation of witnesses, People v Pena, 383 Mich 402; 175 NW2d 767 (1970), and so has this Court, People v McIntosh, 142 Mich App 314; 370 NW2d 337 (1985). No principled basis exists for distinguishing between the intimidation of defense witnesses and the silencing of prosecution witnesses. Because the prosecutor’s threat procured Hoskins’s unavailability, the trial court erred by admitting Hoskins’s recorded testimony. We vacate and remand for a new trial.
i
Lopez and his codefendant, Jarriel Reed, stood trial for the shooting death of Terry Johnson. Johnson was gunned down as he stood on a Saginaw sidewalk. He had just finished a trip to a nearby market. He was accompanied on the walk by his mother, Diane Austin, and a friend.
Austin immediately deduced that Johnson’s ex-girlfriend, Dominique Williams, had fired the fatal shots, as Johnson and Williams had engaged in “[a] real raging argument” earlier that day. Following the argument, Williams had threatened to kill Johnson and brandished a knife to validate her intentions. The police cleared Williams after interviewing her and conducting a comprehensive investigation. The inves *708 tigation unearthed several pieces of evidence tying Lopez and Reed to the shooting.
The investigating officers found fresh, spent .380-caliber shell casings approximately one block from the scene. One officer recognized the casings as identical in caliber, color, and brand to those found near a drive-by shooting committed eight days earlier. The police suspected that Hoskins had been the shooter in that case, accompanied by Reed and Lopez. Information obtained from a resident in the neighborhood of Johnson’s shooting sharpened the focus on Lopez. The witness reported seeing a man run down the sidewalk after the gunfire. During a photo show-up, she picked out Lopez as appearing “most like the runner,” but she could not make a definitive identification. Adding to the data pointing to Reed’s involvement, a friend of his told the police that Reed had admitted to killing Johnson, confessing, “I did it, I did it, I got the wrong one.”
Dennis Hoskins supplied the core evidence tying Lopez to Johnson’s murder. During his preliminary examination, Hoskins conceded that he faced a charge of assault with intent to commit murder arising from the drive-by shooting, and that Lopez had testified against him during the preliminary examination in that case. Several months after Johnson’s shooting, Hoskins agreed to provide information to the police and prosecutor incriminating Reed and Lopez. He testified that both had admitted to participating in Johnson’s murder, with Lopez acting as the trigger-man. According to Hoskins, Reed initially believed that Johnson was a man called “Zeke” who had shot and wounded Reed’s brother some years earlier. Hoskins claimed that Reed and Lopez had openly discussed various details of Johnson’s killing, including that the gun involved was a .380 caliber.
*709 One week before the joint trial of Reed and Lopez was scheduled to begin, the prosecutor filed a motion to declare Hoskins “unavailable” as a witness and to admit his preliminary-examination testimony pursuant to MRE 804(b)(1). The motion was based on a voicemail the prosecutor received from Hoskins’s attorney, Robert Dunn, advising that Hoskins was no longer willing to testify.
The Court considered the prosecutor’s motion on the day before trial. Hoskins asserted at this hearing, “I wish to testify at trial.” A court officer then guided Hoskins from the courtroom.
The following morning, before jury selection, the prosecutor referenced an issue that had been discussed in chambers and off the record. He advised the court, “[I]t was brought to my attention, that as Mr. Hoskins was leaving the courtroom and after we had the hearing on the motion to declare him unavailable, that he made comments to Mr. Lopez and Mr. Reed to the effect that, T’ve got you covered, bro.’ ” The prosecutor explained that he had interpreted this statement to mean that Hoskins “may intend to perjure himself during this trial, or give testimony that’s inconsistent with his testimony at the preliminary examination.” Citing an unpublished opinion issued by this Court in 1997, the prosecutor requested that the court summon Hoskins and advise him, outside the presence of the jury, “of his Fifth Amendment right if he does intend to give perjured testimony, to make sure he is aware of his rights, and then determine what if anything he decides to do at that point.”[1]
*710 The prosecutor then brought to the trial court’s attention that Reed’s counsel, Edwin Johnson III, had accused the prosecutor of “threatening or intimidating Mr. Hoskins during our colloquy with him yesterday morning.” According to the prosecutor, attorney Johnson had been the first to advise Hoskins that he could face perjury charges. The prosecutor continued, “I did follow that up with I’m not going to threaten you, but we will — we could possibly charge you with perjury if you do say something that’s inconsistent with what you testified to at the preliminary examination.” The prosecutor urged that this Court’s unpublished 1997 case supported that “if I did in fact, I suppose, quote-unquote, threaten him, . . . the court says that’s not a threat. That’s just the reality. If you do provide perjured testimony, you could in fact be charged with perjury.”
Attorney Johnson took issue with the prosecutor’s reprise of the interaction. “It’s not just that the prosecutor, in my view, threatened the witness,” Johnson urged, “but he also stated to the witness that if he were convicted, he would be facing life in prison, which is a misstatement of the law.”
Lopez’s attorney interjected that he witnessed the interaction with Hoskins. He described that the prosecutor
did in fact tell the witness that he would be looking at life. And the manner in which [the prosecutor] spoke was not as he spoke here; it was more of a threatening, kind of an aggressive statement to this young man. It wasn’t just, well, these are your rights, young man. You know, just the tone of his voice, it sounded like a threat to me.
One of the investigating officers was also in the room during the discussion with Hoskins. She reported, “I didn’t hear any threats or anything. [The attorneys] *711 spoke to Mr. Hoskins just as they spoke to you .... I didn’t hear any threatening from either one of them.”
The court noted that Hoskins consulted with his own attorney before agreeing to testify. As neither Hoskins nor his counsel was present, the court indicated it would revisit the issue outside the presence of the jury when Hoskins took the stand.
Hoskins and his counsel, Dunn, were present on the third day of the trial. Attorney Dunn indicated that he and Hoskins had discussed the issue further. The following colloquy ensued:
Mr. Dunn: I believe at this point, after considering the matter again, he wishes to exercise his Constitutional right under the Fifth Amendment of the United States Constitution and refuse to answer questions which could subject him, possibly, to a charge of perjury if he were to answer them.
The Court. Mr. Hoskins, did you hear and understand what [your attorney] has stated to the Court?
[Hoskins]: Yes. The prosecutor’s told me — they threatened me with life in prison.
The Court. Okay. With regard to your right to testify or not testify, do you wish to exercise your Fifth Amendment privilege and not testify at this time?
[Hoskins]: Yes, sir.
After Hoskins was escorted from the courtroom, the prosecutor renewed his motion to declare Hoskins unavailable and to admit his preliminary-examination testimony pursuant to MRE 804(b)(1). Reed’s counsel asked that “the record.. . reflect” that Hoskins had elected against testifying because he had been threatened with life imprisonment if his testimony differed from that given at the preliminary exam. Counsel requested that the jury be instructed that it was the prosecutor’s duty to produce this witness who was *712 rendered unavailable by the prosecution itself, and that the jury could “infer that his testimony would have been damaging to their case had he appeared.”
Reed’s counsel also objected to the admission of the preliminary-examination testimony “because I can’t cross-examine a transcript” and “there was evidence produced after the preliminary exam that would impeach his testimony during the preliminary exam.” But counsel “reluctantly underst[oo]d that” the exam could be placed into evidence under the circumstances. Lopez’s attorney further requested that the jury be advised of Hoskins’s recent conviction, and the court agreed.
The court proceeded to play the recording of Hosk-ins’s preliminary-examination testimony into the record. No explanation was given to the jury at that time regarding this procedure.
The following day, the prosecutor called attorney Dunn to the stand. Reed’s counsel elicited the following information:
Q. And isn’t it true that [Hoskins] came in and put a statement on the record as it relates to whether he was going to testify in this trial or not?
A. Just before the start of this trial, that’s correct.
Q. And isn’t it true that, in his statement, he said that he was taking the Fifth Amendment?
A. That’s right. He was exercising his constitutional right not to testify.
Q. And isn’t it true that he unsolicited — in an unsolicited manner added to that that the reason that he was taking the Fifth Amendment is because he felt he had been threatened by the prosecution with life imprisonment?
A. Yes. I believe the prosecutor had told him that the penalty for perjury in a murder trial is up to life in prison, which is correct.
*713 Q. Mm-hmm. But the penalty for perjury in a preliminary exam of a murder trial is not life imprisonment; is it?
A. No, it’s 15 years. I don’t know of anybody that would want to do 15 years in a Michigan prison.
Q. That wasn’t the question I asked you. I asked you, isn’t it true that wasn’t - that the penalty for telling an untruth in a preliminary exam is not life imprisonment?
A. I believe that’s correct.
Q. And isn’t it true that his statement was that he wasn’t testifying because he felt as though the prosecution threatened him with life imprisonment?
A. No, that was an add-on, as you say, unsolicited statement, was not in response to the question. He did not want to take the chance that possibly he could be charged with peijury and face up to life in prison, so he exercised his Fifth Amendment right.
Q. Sir, is it not the truth that he sat on that stand, and in an unsolicited statement, under oath, stated that the reason he was taking the Fifth was because he felt threatened by the prosecutor, who had threatened him with life imprisonment? Isn’t that what he said?
A. That’s not exactly what he said.
Lopez’s counsel then secured testimony that Hoskins had been charged with three counts of assault with intent to murder, which came with a possible life sentence. Hoskins ultimately pleaded to lesser counts of felonious assault, a four-year felony, Dunn testified.
On redirect, the prosecutor presented Hoskins’s plea agreement in which he agreed to testify against Lopez and Reed. The document gave Hoskins advance warning of the consequences of perjury. The prosecutor also elicited that Hoskins did not tell Dunn that the prosecutor had threatened him before taking the stand and invoking his Fifth Amendment privilege.
*714 On the final day of trial, Reed’s counsel moved to strike Hoskins’s testimony under MRE 804(a), which defines when a witness may be deemed unavailable. Counsel asserted that the prosecutor caused Hoskins’s absence through his threats, vitiating the applicability of the MRE 804(b) hearsay exceptions.
The prosecutor denied making any threats and reiterated that Reed’s counsel actually broached the subject with Hoskins. The prosecutor emphasized attorney Dunn’s testimony regarding Hoskins’s motivations. Moreover, the prosecutor argued that defense counsel had ample opportunity to cross-examine Hosk-ins at the preliminary examination.
The court ultimately ruled:
Well, this is all very interesting and we’ve made a clear record of your positions. I’m going to deny the motion itself.
The witness himself indicated he felt threatened; that’s why he wasn’t testifying. Mr. Dunn could say what he wanted to say, but I’m not going to take his testimony over the witness’s testimony himself.
The jury subsequently convicted Lopez of first-degree premeditated murder, conspiracy, and several weapons-related charges. Lopez now appeals, challenging only the admission of Hoskins’s preliminary-examination testimony.
II. ANALYSIS
MRE 804(b)(1) excepts from the rule against hearsay a witness’s prior testimony given under oath and subject to cross-examination by the opposing party if, as contemplated in MRE 804(a)(1), the witness is unavailable to testify because he or she has invoked a privilege. People v Meredith, 459 Mich 62, 65-67; 586 *715 NW2d 538 (1998). The admission of former testimony tested by cross-examination generally comports with the requirements of the Confrontation Clause. See People v Garland, 286 Mich App 1, 7; 777 NW2d 732 (2009). However, MRE 804(a) posits that “[a] declarant is not unavailable as a witness if’ his or her refusal to testify “is due to the procurement or wrongdoing of the proponent of a statement for the purpose of preventing the witness from attending or testifying.” Lopez contends that Hoskins could not be deemed unavailable because the prosecutor procured his absence by threatening him with a charge of perjury and lifetime imprisonment.
Lopez presents two closely interrelated arguments: that the prosecutor behaved wrongly in “threatening” Hoskins with a perjury prosecution, and that the prosecutor “procured” Hoskins’s unavailability by virtue of the threats. We examine each in turn.
In Webb v Texas, 409 US 95, 95-96; 93 S Ct 351; 34 L Ed 2d 330 (1972), the United States Supreme Court reversed a defendant’s conviction based on the conduct of the trial judge, who “on his own initiative, undertook to admonish” the sole defense witness that he would be prosecuted for perjury if he took “the witness stand and lie[d] under oath.” (Quotation marks omitted.) The witness was serving a prison sentence at the time. Id. at 95. “It will also be held against you in the penitentiary when you’re up for parole,” the judge declared, “and the Court wants you to thoroughly understand the chances you’re taking by getting on that witness stand under oath.” Id. at 96 (quotation marks omitted).
The Supreme Court observed that the judge had not only “gratuitously singled out this one witness for a lengthy admonition on the dangers of perjury,” but had also
*716 implied that he expected [the witness] to lie, and went on to assure him that if he lied, he would be prosecuted and probably convicted for perjury, that the sentence for that conviction would be added on to his present sentence, and that the result would be to impair his chances for parole. [Id. at 97.]
This conduct “effectively drove that witness off the stand,” the Court held, “and thus deprived the petitioner of due process of law under the Fourteenth Amendment.” Id. at 98.
Our Supreme Court had confronted a somewhat analogous factual scenario two years before Webb was decided, and reached essentially the same conclusion. In Pena, 383 Mich 402, the threat of perjury was made by a prosecutor rather than a judge. The prosecutor sent a letter to three defense witnesses, on official stationery, that simply quoted verbatim the statute punishing perjury.[2] Defense counsel moved to dismiss the charges “on the ground that the prosecutor’s ‘letter’ violated the Fourteenth Amendment of the United *717 States Constitution by intentionally intimidating the defense witnesses.” Id. at 405 (opinion by T. G. KAVANAGH, J.). The trial court denied the motion. Two of the witnesses subsequently testified for the defense, while one called as a prosecution witness claimed to have forgotten her whereabouts at the relevant time. Id. at 407 (DETHMERS, J., dissenting).
Three justices of the Supreme Court determined that a new trial was required, pithily observing:
The Constitutional right of a defendant to call witnesses in his defense mandates that they must be called without intimidation. The manner of testifying is often more persuasive than the testimony itself.
A prosecutor may impeach a witness in court but he may not intimidate him—in or out of court. [Id. at 406 (opinion by T. G. KAVANAGH, J.).]

 The case referred to was People v Daniels, unpublished opinion per curiam of the Court of Appeals, issued July 11, 1997 (Docket No. 184692).

 The letters read:
Dear Madam:
In the interests of justice I am quoting Michigan Statutes Annotated 28.644, which provides as follows:
“Any person who, being lawfully required to depose truth in any proceeding in a court of justice, shall commit perjury shall be guilty of a felony, punishable, if such perjury was committed on the trial of an indictment for a capital crime, by imprisonment in the state prison for life, or any term of years, and if committed in any other case, by imprisonment in the state prison for not more than fifteen (15) years.”
Very truly yours,
G. E. Thick
Assistant Prosecuting Attorney [Id. at 405 (opinion by T. G. Kavanagh, J.).]