# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TYSHAWN YATES,

        Defendant-Appellant.

UNPUBLISHED
September 14, 2017

No. 332520
Berrien Circuit Court
LC No. 2015-002916-FC

Before: TALBOT, C.J., and O'CONNELL and CAMERON, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of first-degree murder, MCL 750.316; carrying a concealed weapon (CCW), MCL 750.227; felon in possession of a firearm, MCL 750.224f; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to life imprisonment without the possibility of parole for the first-degree murder conviction, 80 to 120 months' imprisonment for the CCW conviction, 80 to 120 months' imprisonment for the felon in possession of a firearm conviction, and two years' imprisonment for the felony-firearm conviction. We affirm.

Defendant's convictions arise from the shooting of Davon Lewis in Benton Harbor, Michigan. On that day, 10 to 15 people gathered at Deontae Scott's house on Broadway Avenue. According to Scott and Ronnell Gillespie, following a dice game, defendant snatched some money from Lewis. Defendant, Scott, Gillespie, and Lewis exited Scott's yard and walked across Broadway. At that point, a physical fight between defendant and Lewis ensued. During the fight, defendant pulled a gun from his waistband, and he tried to hit Lewis with the gun, but Lewis ducked. Defendant then shot Lewis in the stomach. In addition to Scott and Gillespie identifying defendant as the shooter, Aaron Gatlin, who lived next door to Scott, testified that he looked out a window when he heard people yelling. He saw defendant pointing a gun at Lewis. Gatlin looked away, but moments later, he heard a gunshot. Finally, Patrik Madden, another one of Scott's neighbors, testified that he saw the altercation near his house, but he could not identify the shooter.

After a two-week trial, defendant was found guilty on all counts. After filing his appeal, defendant sought a remand for the purpose of filing a motion for a new trial. Defendant claimed he was denied effective assistance of counsel because defense counsel (1) did not stipulate to a

-1-

prior felony conviction and allowed the prosecution to submit evidence of defendant's prior CCW conviction, and (2) failed to investigate the background of Toshi Willingham—the person defendant claimed shot Lewis. We granted defendant's motion to remand.[1] Before the hearing on the motion for a new trial, we granted defendant's request to expand the proceedings to allow defendant to present new evidence that Tyrea Pettigrew lied at the preliminary examination when he testified that defendant shot Lewis.[2] At the hearing, the trial court denied defendant's motion for a new trial.

## I.

On appeal, defendant first raises a number of evidentiary errors premised on inadmissible hearsay and improper opinion testimony at trial. These arguments are without merit.

We review a trial court's evidentiary decisions for an abuse of discretion. *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id.* at 217. However, when the decision involves a preliminary question of law, such as whether a rule of evidence precludes admission, we review the question de novo. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010). A trial court abuses its discretion when it admits evidence that is inadmissible as a matter of law. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). We review any unpreserved evidentiary claims for plain error affecting the defendant's substantial rights. *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003).

" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is not admissible unless it falls within a hearsay exception. MRE 802. An out-of-court statement that is offered for a purpose other than the truth of the matter asserted, such as showing the effect of the statement on the hearer, is not hearsay. *People v Musser*, 494 Mich 337, 350; 835 NW2d 319 (2013); *People v Chambers*, 277 Mich App 1, 11; 742 NW2d 610 (2007).

First, defendant argues that a police officer's statement to Scott constituted inadmissible hearsay. We disagree.

Scott was cross-examined by the defense regarding his failure to make a report to police at the hospital about the shooting. Scott testified that he did not speak with the police at that time because an officer said, "[D]on't worry about it, we know who did it." The police officer's statement was not hearsay because it was not offered for the truth of the matter asserted. Rather, the statement was offered to show its effect on Scott and why Scott decided not to speak with the

---

[1] *People v Yates*, unpublished order of the Court of Appeals, entered August 29, 2016 (Docket No. 332520).

[2] *People v Yates*, unpublished order of the Court of Appeals, entered September 28, 2016 (Docket No. 332520).

police at the hospital. Accordingly, the trial court did not abuse its discretion in admitting the statement for the limited purpose of showing its effect on Scott. *Unger*, 278 Mich App at 216.

Second, defendant argues that Detective Brian Kastelic provided inadmissible hearsay statements at trial. We disagree.

Under examination by defense counsel, Kastelic testified that, other than a statement from Madden regarding the shooter's hairstyle, he did not get any description of the shooter. Then, under questioning from the prosecutor, Kastelic testified that, because the police had received a name—defendant's name—for the shooter, he did not seek a physical description of the shooter from people he interviewed. The out-of-court statements regarding the suspect's hair style and his name were offered to show why Kastelic did not seek a physical description of the shooter from other witnesses. It was offered to show the effect this information had on Kastelic's investigation. Accordingly, the trial court's failure to strike Kastelic's testimony was a reasonable and principled outcome. *Id.* at 217.

Third, defendant argues that the prosecutor referred to inadmissible hearsay during his rebuttal argument. Specifically, by stating in rebuttal that "[t]hey came to us with information and immediately said this is what happened," the prosecutor relied on inadmissible hearsay to argue defendant's guilt. Because defendant did not object to the remark on this basis, the claim of error is unpreserved, *People v Stimage*, 202 Mich App 28, 30; 507 NW2d 778 (1993), and we review it for plain error affecting defendant's substantial rights, *Ackerman*, 257 Mich App at 448.

A prosecutor's remark must be examined in context. *People v McLaughlin*, 258 Mich App 635, 644; 672 NW2d 860 (2003). The context of the prosecutor's remark indicates that the prosecutor was referring to Scott, Gillespie, and Gatlin. Before the remark, the prosecutor made reference to the "three eyewitnesses there that claim this defendant did it," and after the remark, the prosecutor referenced specific testimony from these three witnesses. The prosecutor was arguing that the timing and consistency of their statements enhanced their credibility, which was proper. See *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997). There was no plain error. *Ackerman*, 257 Mich App at 448.

In addition to the above hearsay challenges, defendant argues that the challenged police statements to Scott were improper opinions on defendant's guilt. We disagree.

Because defendant did not object to the testimony on this ground, the claims of error are unpreserved. See *Stimage*, 202 Mich App at 30. We review these unpreserved claims for plain error affecting defendant's substantial rights. *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011).

A witness may not opine on the defendant's guilt or innocence. *People v Heft*, 299 Mich App 69, 81; 829 NW2d 266 (2012). Kastelic only testified that he obtained a suspect's name at the outset of the investigation and that the suspect was defendant. The officer's statement to Scott was admitted for the limited purpose of showing its effect on Scott; therefore, it was not an expression of opinion on defendant's guilt. There was no plain error. *Benton*, 294 Mich App at 202.

Defendant also claims Kastelic improperly opined that defendant was guilty. At trial, Kastelic said he "key[ed] in on" defendant as a suspect "[w]ithin hours after arriving on scene" because defendant's name was the only name he received as the shooter during the investigation. The admission of this testimony by Kastelic was not plainly erroneous. *Id.* Kastelic offered no opinion on defendant's guilt. Instead, Kastelic explained why the investigation focused on defendant as a suspect. See *Heft*, 299 Mich App at 83 (indicating that a police officer does not offer an opinion on the defendant's guilt when the officer explains the steps of his investigation).

Defendant similarly argues Kastelic improperly opined that Willingham was innocent of Lewis's murder. However, Kastelic's testimony that "Willingham had nothing to do with this case" was in response to defendant's questions on cross-examination where he suggested police had information that Willingham was possibly the shooter. Because a defendant may not complain of testimony that the defendant invited or instigated, *People v Whetstone*, 119 Mich App 546, 554; 326 NW2d 552 (1982), defendant is precluded from arguing that he is entitled to relief because of Kastelic's testimony.

II.

Defendant argues that the trial court erred in excluding evidence of Willingham's possession of a gun. We disagree.

We review the trial court's exclusion of the evidence for an abuse of discretion. *Unger*, 278 Mich App at 216. A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id.* at 217.

Generally, relevant evidence is admissible. MRE 402; *People v Roper*, 286 Mich App 77, 91; 777 NW2d 483 (2009). " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.

Defendant first claims that the trial court erred in excluding evidence of Willingham's possession of a gun because the evidence made it more probable that Willingham was the person who shot Lewis. This argument is without merit. A defendant may introduce evidence that another person committed the crime for which the defendant has been charged in order to generate reasonable doubt about the defendant's guilt. 29 Am Jur 2d, Evidence, § 598, p 663; 40A Am Jur 2d, Homicide, § 283, p 137. However, the defendant must first lay a sufficient foundation for the evidence, which requires the defendant to introduce evidence that has an inherent tendency to connect the other person with the crime. 40A Am Jur 2d, Homicide, § 283, p 137.

There was no substantive evidence that Willingham was at Scott's house on the night of the shooting. Scott and Gillespie testified that Willingham was not there. The only evidence defendant relies on to connect Willingham to Lewis's shooting is Madden's witness statement to Kastelic that the shooter had dreadlocks (Willingham had dreadlocks; defendant did not). At trial, however, Madden testified he could not describe the man who he saw tussle with Lewis, other than he was African-American. Madden could not recall how the man wore his hair or if he ever told Kastelic that the man had dreadlocks. When a witness claims not to remember

-4-

making a prior inconsistent statement, the witness may be impeached by extrinsic evidence of that statement. *People v Jenkins*, 450 Mich 249, 256; 537 NW2d 828 (1995). The purpose of extrinsic impeachment evidence is to prove that a witness made a prior inconsistent statement—not to prove the contents of the statement. *Id.*; see also *People v Alexander*, 112 Mich App 74, 77; 314 NW2d 801 (1981) (stating that "Michigan does not allow prior inconsistent statements to be used as substantive evidence"). After Madden testified that he did not give a description of the man to Kastelic and did not recall stating that the man had dreadlocks, defendant impeached Madden with evidence of his interview with Kastelic. But this prior inconsistent statement was admissible to impeach Madden, not to prove the true appearance of the man who tussled with Lewis. *Jenkins*, 450 Mich at 256; *Alexander*, 112 Mich App at 77. Because insufficient evidence connected Willingham to the shooting, the trial court's decision to exclude an inquiry into Willingham's prior possession of a gun did not fall outside the range of reasonable and principled outcomes. *Unger*, 278 Mich App at 217.

Defendant further argues that Willingham's prior possession of a gun was also relevant to show Willingham lied about defendant pulling a gun on him three times in 2014. "Evidence bearing on a witness's credibility is always relevant." *In re Dearmon*, 303 Mich App 684, 696; 847 NW2d 514 (2014). However, defendant does not explain how Willingham's prior possession of a gun makes it more probable that Willingham lied about defendant having a gun on three particular occasions in 2014. Accordingly, we reject defendant's argument that the trial court abused its discretion in failing to admit evidence of Willingham's prior possession of a gun for the purpose of determining Willingham's credibility.

Additionally, defendant argues that if the trial court did not abuse its discretion in excluding evidence of Willingham's possession of a gun, the rulings denied him the right to present a defense. A defendant has a constitutional right to present a defense. *Unger*, 278 Mich App at 249-250. However, the right to present a defense is not absolute. *Id.* at 250. Because a "defendant must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt or innocence," the right to present a defense only extends to relevant and admissible evidence. *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255 (2016) (quotation marks and citation omitted). Because evidence that Willingham possessed a gun was not relevant, exclusion of the evidence did not violate defendant's right to present a defense.

III.

Defendant next argues that the trial court abused its discretion in allowing the prosecutor to present evidence under MRE 404(b) of defendant's prior possession of a gun. Specifically, Willingham testified that defendant had a gun on three occasions in 2014, and on two of those occasions, defendant shot at him. We disagree.

We review a trial court's evidentiary decisions for an abuse of discretion. *Unger*, 278 Mich App at 216-217. A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id.* at 217.

MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Other-acts evidence is admissible if (1) the prosecutor introduces the evidence for a proper purpose, which is any purpose other than to show the defendant's action and conformity therewith, (2) the evidence is relevant to an issue of fact that is of consequence at trial, and (3) under MRE 403, the danger of unfair prejudice does not substantially outweigh the probative value of the other-acts evidence. *People v Steele*, 283 Mich App 472, 479; 769 NW2d 256 (2009). Upon request, the trial court may provide a limiting instruction. *People v VanderVliet*, 444 Mich 52, 75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).

While Willingham's testimony was admitted under MRE 404(b), evidence of defendant's prior possession of a gun is not governed by this court rule. Instead, such evidence is admissible under MRE 401, without reference to MRE 404(b). *People v Hall*, 433 Mich 573, 580, 583, 588; 447 NW2d 580 (1989) (opinion by BOYLE, J.). "Evidence of a defendant's possession of a weapon of the kind used in the offense with which he is charged is . . . direct, relevant evidence of his commission of that offense." *Id*. at 580-581. Notably, evidence of a defendant's possession of a gun is not objectionable simply because the gun is never conclusively identified as the gun used in the crime. *Id*. at 582 n 7. All that is required is that the gun possessed by defendant be "of the same kind" as that used in the offense. *Id*.

The weapon used in the fatal shooting was never recovered; therefore, it could not be identified as the same gun used to shoot Lewis. But there was evidence that the gun possessed by defendant in 2014 was "of the same kind" as that used in Lewis's shooting. *Id*. According to Scott, the gun defendant used to kill Lewis was a semiautomatic pistol. Gillespie and Gatlin similarly described the murder weapon as a black handgun. Willingham described defendant's weapon from the prior shooting incident in 2014 as a black pistol. Kayjuan Spears, who was with Willingham on one of the three occasions in 2014, also described it as a handgun. Finally, a firearm examiner determined the bullet recovered from Lewis belonged to a handgun—most likely a nine millimeter. Based on *Hall*, 433 Mich at 580-581, 583, 588, evidence of defendant's prior possession of a gun, which was "of the same kind" as that used in Lewis's shooting, was admissible under MRE 401, without reference to MRE 404(b), as direct evidence of defendant's commission of the shooting.

Although relevant, the evidence still remained subject to MRE 403. Under MRE 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. "Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008); see also *People v McGhee*, 268 Mich App 600, 614; 709

NW2d 595 (2005) (stating that "[u]nfair prejudice exists when there is a tendency that evidence with little probative value will be given too much weight by the jury").

Evidence that defendant possessed a gun in 2014 had significant probative value. The prosecutor needed to prove that defendant was the person who shot Lewis, and defendant's recent possession of a similar gun was evidence of defendant's commission of the shooting. Notwithstanding its significant probative value, testimony that defendant previously shot the gun at Willingham and Spears created a danger that the jury would draw an improper character inference from the evidence. On balance, the trial court concluded that its probative value was not substantially outweighed by the danger of unfair prejudice and provided a limiting instruction that required the jury to only consider the evidence for the purpose of determining whether defendant had access to a gun, and not whether defendant was a bad person or was likely to commit crimes. This instruction sufficiently limited the danger of unfair prejudice. See *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998) ("It is well established that jurors are presumed to follow their instructions."); *People v Pesquera*, 244 Mich App 305, 320; 625 NW2d 407 (2001) ("The limiting instruction given to the jury also served to limit the danger of unfair prejudice by restricting use of the evidence."). The trial court did not abuse its discretion in determining that MRE 403 did not require exclusion of the evidence. *Unger*, 278 Mich App at 216-217.

IV.

Defendant next argues that he was denied effective assistance of counsel because defense counsel failed to offer to stipulate to defendant's prior conviction, allowing the prosecutor to admit evidence that defendant was previously convicted of CCW. We disagree.

At the evidentiary hearing following defendant's conviction, the trial court had to determine, *inter alia*, whether defense counsel was ineffective for failing to enter into a stipulation regarding defendant's prior CCW conviction. At the conclusion of the evidentiary hearing, the trial court held that defendant was not denied the effective assistance of counsel. Because defendant raised this issue at the hearing, it is preserved. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008).

The question whether a defendant has been denied effective assistance of counsel presents a question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). A trial court must first find the facts, and then decide whether those facts constitute a violation of the defendant's right to effective assistance of counsel. *Id.* We review a trial court's findings of fact for clear error and questions of constitutional law de novo. *Id.*

To establish a claim for ineffective assistance of counsel, a defendant must show (1) that defense counsel's performance fell below objective standards of reasonableness and (2) there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *People v Uphaus (On Remand)*, 278 Mich App 174, 185; 748 NW2d 899 (2008). To prove that counsel's performance fell below objective standards of reasonableness, a defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy. *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011). In deciding whether a defendant was denied effective assistance of counsel, a trial court

must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Because defendant was charged with felon in possession of a firearm, MCL 750.224f, the prosecutor had to prove that defendant had previously been convicted of a felony. See *People v Bass*, 317 Mich App 241, 267-268; 893 NW2d 140 (2016). However, defendant had the right to stipulate that he was ineligible to possess a firearm because of a prior conviction. See *Old Chief v United States*, 519 US 172, 174, 191-192; 117 S Ct 644; 136 L Ed 2d 574 (1997); *People v Swint*, 225 Mich App 353, 377-379; 572 NW2d 666 (1997).

At the conclusion of the evidentiary hearing, the trial court stated that it was "unclear" whether defense counsel's failure to offer a stipulation was intended as trial strategy. It did not make a specific finding whether defense counsel strategically chose not to offer a stipulation on the CCW conviction. Rather, the trial court concluded that the fact that defense counsel did not offer to stipulate, regardless whether it was intentional or not, was sound trial strategy and did not fall outside the wide range of professionally competent assistance. We agree with the trial court's conclusion.

Based on the trial court's earlier ruling on other-acts evidence, defense counsel knew that the prosecutor would introduce evidence of several prior occasions where defendant possessed a gun. The jury would therefore hear evidence that defendant had possessed a firearm in the past. Evidence that defendant's prior conviction was for CCW would cause minimal prejudice to defendant, and the jury was not left to speculate about the nature of the prior conviction. This was within the scope of sound trial strategy. Indeed, defense counsel argued defendant would not have reasonably carried a gun on the day of the shooting because he was previously convicted of CCW. This, too, was sound trial strategy. In light of all the circumstances, defense counsel's failure to offer to stipulate did not fall outside the wide range of professionally competent assistance, *Strickland*, 466 US at 690, and defendant was not denied effective assistance of counsel.

V.

Next, defendant argues that the trial court's appointment of Paul Jancha, Jr., to advise Pettigrew at the hearing on the motion for a new trial violated MRPC 1.7 because Jancha had previously represented Willingham. We disagree.

Defendant did not object to the appointment of Jancha. Therefore, the claim of error is unpreserved, *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007), and we review it for plain error affecting defendant's substantial rights, *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

MRPC 1.7 provides:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

Defendant does not have standing to raise the alleged conflict of interest. Because MRPC 1.7 requires "each client" or the "client" to consent to a lawyer's representation, it is the clients who have standing to challenge a lawyer's representation. Defendant was never a client of Jancha.

Regardless, even if defendant has standing to raise the alleged conflict of interest, and even if Jancha had a conflict of interest in advising Pettigrew, defendant is not entitled to relief. At the evidentiary hearing on the motion for a new trial, Pettigrew took Jancha's advice to exercise his right to remain silent. Nothing on the record supports a conclusion that Pettigrew, had he been advised by a different attorney, would not have made the decision to remain silent. Accordingly, defendant cannot show that the trial court's appointment of Jancha to advise Pettigrew affected his substantial rights. *Carines*, 460 Mich at 763.

VI.

Defendant also argues that the trial court and the prosecutor, through their warnings and comments to Pettigrew, coerced Pettigrew into not testifying at the evidentiary hearing. Because Pettigrew did not testify at the hearing, defendant claims he was denied his right to present a witness in support of his motion for a new trial. We disagree.

Defendant did not object to the alleged improper warnings and comments. Therefore, the claim of error is unpreserved, *Metamora Water Serv, Inc*, 276 Mich App at 382, and we review it for plain error affecting defendant's substantial rights, *Carines*, 460 Mich at 763.

A prosecutor may have a duty to inform the trial court of the need to inform a witness about the right against self-incrimination. *People v Callington*, 123 Mich App 301, 306-307; 333 NW2d 260 (1983). The prosecutor should inform the trial court, out of the presence of the witness, of the possible need for the witness to be informed of the right. *People v Dyer*, 425 Mich 572, 578 n 5; 390 NW2d 645 (1986). The prosecutor should provide the basis for the request, and if the trial court concludes that the witness should be warned, it should inform the witness of the right against self-incrimination. *Id.*; *Callington*, 123 Mich App at 307.

A fundamental element of due process is the right to present a defense, which includes the right to present witnesses to establish a defense. *Washington v Texas*, 388 US 14, 19; 87 S Ct 1920; 18 L Ed 2d 1019 (1967). A trial court's warnings to a witness about the right against self-incrimination may infringe on this element of a defendant's right to due process. See *Webb v Texas*, 409 US 95, 98; 93 S Ct 351; 34 L Ed 2d 330 (1972). In *Webb*, the United States Supreme Court held that the trial court's "gratuitously" given warnings, in which it implied that it expected the witness to lie and then assured the witness that if he lied he would be prosecuted and probably convicted of perjury, his sentence for a perjury conviction would be added onto his present sentence, and his chances for parole would be impaired, "effectively drove th[e] witness off the stand, and thus deprived the petitioner of due process of law." *Id.* at 95-98.

At defendant's preliminary hearing, Pettigrew was the only witness who testified that defendant shot Lewis. Pettigrew did not testify at trial, but he executed an affidavit after defendant's conviction, claiming he lied at the preliminary hearing. Pettigrew took the stand at the evidentiary hearing after trial, and the prosecutor was suspicious that Pettigrew might testify he lied under oath. For that reason, the prosecutor informed the trial court that there was a possibility that Pettigrew would commit perjury. The trial court warned Pettigrew that he could face perjury charges, but those warnings were not "gratuitously" given.

Twice, the trial court asked Pettigrew if he understood that he could face criminal charges—perjury—if he testified differently than he did at defendant's preliminary examination. But the trial court's admonitions did not contain any language akin to the "unnecessarily strong terms" or "threatening remarks" used by the trial court in *Webb*. *Id.* at 97-98. The trial court did not threaten Pettigrew that it would make sure he was charged with perjury, nor did the trial court make any threats about the consequences of a perjury conviction. Under the circumstances, the trial court's two admonishments to Pettigrew that he could be charged with perjury did not clearly or obviously infringe on defendant's right to present a defense. *Carines*, 460 Mich at 763.

Similarly, a prosecutor may inform a witness that false testimony may result in a perjury charge. *People v Lopez*, 316 Mich App 704, 720; 892 NW2d 493 (2016); *People v Layher*, 238 Mich App 573, 587; 607 NW2d 91 (1999), aff'd 464 Mich 756 (2001). However, a prosecutor may not intimidate a witness, *Layher*, 238 Mich App at 587. When Pettigrew, who had been instructed to sit in the hallway outside the courtroom, was called as a witness, the prosecutor informed the trial court that Pettigrew was potentially going to be admitting to perjury and that Pettigrew had a right to be advised on his right against self-incrimination. The prosecutor attempted to comply with the proper procedure for informing a witness about his right against self-incrimination. See *Dyer*, 425 Mich at 578 n 5. Once Pettigrew swore to tell the truth and took the witness stand, the prosecutor did not make any comments to him.

The only comment made by the prosecutor that could be seen as intimidation was the comment that "[h]e's potentially going to be admitting to perjury." The record does not indicate whether Pettigrew was present when the prosecutor made this comment. But even if Pettigrew heard the prosecutor's comment, because a prosecutor may inform a witness that false testimony may result in a perjury charge, *Lopez*, 316 Mich App at 720; *Layher*, 238 Mich App at 587, and because there were no circumstances surrounding the comment that rendered it coercive or threatening, the comment was not clearly or obviously improper. *Carines*, 460 Mich at 763.

Because the trial court and the prosecutor were not coercive or threatening, defendant was not denied his right to present a witness in support of his motion for a new trial.

VII.

Defendant argues that the trial court erred in denying his motion for a new trial based on newly discovered evidence, i.e., Pettigrew's claim that he lied about seeing defendant shoot Lewis. We disagree.

We review a trial court's decision on a motion for a new trial for an abuse of discretion. *People v Terrell*, 289 Mich App 553, 558; 797 NW2d 684 (2010). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *Id*. at 559.

In *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003), the Supreme Court stated:

> For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial. [Quotation marks and citation omitted.]

The defendant carries the burden of satisfying all four elements of the *Cress* test. *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012).

Evidence is not newly discovered if the defendant or defense counsel was aware of the evidence at the time of trial. *Id.* at 281. Based on defense counsel's comments at trial and his testimony at the evidentiary hearing, defense counsel was aware of Pettigrew's claim that he had lied about witnessing Lewis's shooting. Notably, at the evidentiary hearing, defense counsel testified that he talked with Pettigrew several times before trial. According to defense counsel, Pettigrew said that he lied at defendant's preliminary examination and that he was put up by the police and the prosecutor to give false testimony.

When evidence is known to a defendant at the time of trial, a defendant must use reasonable diligence to produce the evidence at trial. What constitutes reasonable diligence depends on the circumstances of the case. *Id.* at 283-284. If a defendant claims that evidence is unavailable because a witness cannot be found, reasonable diligence may include asking for a continuance or postponement. *Id.* at 284; see also *People v Purman*, 216 Mich 430, 438-439; 185 NW 725 (1921) ("A new trial will not be granted because of newly discovered evidence where the witness who was to give it was known to the accused, although he could not be found at the time of the trial, where no continuance or postponement was requested."). The record is unclear why Pettigrew did not appear at trial and testify. But defense counsel never requested a continuance because Pettigrew could not be found, nor did defense counsel request that a warrant be issued for Pettigrew's arrest because Pettigrew failed to comply with a subpoena. Because there is no indication on the record that defense counsel took any reasonable steps to rectify the condition that caused Pettigrew's absence, defendant has failed to meet his burden of showing that, using reasonable diligence, he could not have produced Pettigrew at trial. *Rao*, 491 Mich at 279.

-11-

Furthermore, Pettigrew's testimony would not have made a different result probable on retrial. *Cress*, 468 Mich at 692. Pettigrew's proposed testimony was that he lied about the shooting because he was not at Scott's and never saw defendant shot Lewis. The fact remains, however, that Pettigrew's testimony would not contradict the testimony from Scott, Gillespie, and Gatlin who identified defendant as the person that pointed a gun at Lewis and shot him. Even after hearing testimony that Scott, Gillespie, and Gatlin received favors from the police or the prosecutor, the jury still convicted defendant. Any testimony from Pettigrew would not make a different result probable on retrial. *Id.*. Therefore, the trial court did not abuse its discretion in denying defendant's motion for a new trial. *Terrell*, 289 Mich App at 559.

VIII.

Finally, defendant argues that he is entitled to a new trial based on the cumulative effect of the errors. We review a claim regarding the cumulative effect of errors to determine if the combination of alleged errors denied the defendant a fair trial. *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). The cumulative effect of several errors may warrant reversal even where individual errors would not merit reversal. *Id.* But absent the establishment of errors, there can be no cumulative effect of errors warranting reversal. *Id.* Because defendant has not established any errors, a new trial is unwarranted.

Affirmed.

/s/ Michael J. Talbot
/s/ Peter D. O'Connell
/s/ Thomas C. Cameron