# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DONELL DESHAWN JACKSON,

        Defendant-Appellant.

UNPUBLISHED
September 14, 2017

No. 332421
Wayne Circuit Court
LC No. 15-003076-01-FC

Before: GADOLA, P.J., and CAVANAGH and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree felony murder, MCL 750.316(1)(b), armed robbery, MCL 750.529, and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant to life in prison without parole for the murder conviction, life in prison with parole for the armed robbery conviction, and two years' imprisonment for the felony-firearm conviction. We affirm.

## I. BACKGROUND

On October 9, 2014, Terry Collins was murdered while walking down Atkinson Street in Detroit. Defendant, and his friend, David Williams, were walking down Third Street near Atkinson when defendant was talking about "hitting a lick." At one point, Williams stopped to talk to someone he met while on Third, but defendant continued and turned down Atkinson. Williams followed shortly after, bumping into a postal service worker, Darius Jackson, on his route. A confrontation broke out between defendant and Collins when defendant reached for Collins's backpack. According to Jackson, Collins started swinging his backpack and saying, "[G]et off me." At this point, defendant pulled a firearm from his waistband, shot Collins, and walked off with Collins's backpack. Collins died from the gunshot wound.

Williams and defendant left the scene, and when they made their way a few streets over, defendant gave Williams the cellular phone that Collins was carrying. The police were able to track the cellular phone to Williams a few days later, and Williams eventually admitted that not only did he get the cellular phone from defendant, but defendant shot Collins. Bernicea Stovall, Mercedes Moultrie, and Alexus Perkins first told the police and then testified at trial that, while they were all at a friend's house the day after the shooting, defendant admitted to shooting Collins. Antonio Jordan testified that he was defendant's cellmate in jail, and in November of 2015, defendant told Jordan that he shot Collins.

-1-

Williams was charged with first-degree felony murder for his part in the incident. Before trial, however, Williams signed an agreement for special consideration that provided that Williams would "provide complete and truthful testimony" against defendant in exchange for a sentence of 12 to 30 years' imprisonment. The document also indicated that Williams would violate the agreement by giving "false, incomplete, or misleading testimony or information," in which event his sentence agreement would be cancelled, and the first-degree murder charges reinstated.

At trial, the prosecution called Williams to testify. When asked if he saw the shooting, Williams answered, "No." The prosecutor immediately requested to speak outside the presence of the jury. After the jury was escorted out of the courtroom, the prosecutor informed the trial court that Williams had entered a special consideration agreement, but "right now he's not, he's not complying with that order. So I just want to let him know that if he doesn't tell the truth about what happened, that agreement is off and he's going to go on trial for first-degree murder, also." The trial court decided to wait to recommence Williams's testimony until he could speak to an attorney. The next day, Williams's appointed counsel addressed the trial court and indicated that Williams had reviewed his police statement and "wish[ed] to continue with his testimony." Williams took the stand again and testified that defendant attempted to rob Collins, but when Collins resisted, "[defendant] shot him."

As indicated above, the jury found defendant guilty of first-degree felony murder, armed robbery, and felony-firearm.

## II. ANALYSIS

*Defendant Has Not Proven Prosecutorial Misconduct.* Defendant first argues that he was denied a fair trial because the prosecution threatened Williams at trial and forced him to testify that defendant was the shooter. We review defendant's unpreserved claim of prosecutorial misconduct for plain error affecting defendant's substantial rights. *People v Cooper*, 309 Mich App 74, 88; 867 NW2d 452 (2015). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of defendant's innocence." *People v Ackerman*, 257 Mich App 434, 448-449; 669 NW2d 818 (2003).

Our courts have "forcefully condemned the prosecutorial intimidation of witnesses." *People v Lopez*, 316 Mich App 704, 707; 892 NW2d 493 (2016). Generally, issues pertaining to witness intimidation are analyzed under the framework of prosecutorial misconduct, and the ultimate question is whether, after examining the "statements and actions in context, the defendant was denied a fair and impartial trial." *People v Hill*, 257 Mich App 126, 135; 667 NW2d 78 (2003). The propriety of a prosecutor's conduct depends on the specific facts of each case. *People v Rodriguez*, 251 Mich App 10, 30; 650 NW2d 96 (2002).

Defendant argues that the prosecution engaged in misconduct by intimidating Williams into testifying that defendant was, in fact, the shooter who robbed and murdered Collins. Defendant relies almost entirely on this Court's recent decision in *Lopez*. *Lopez*, however, is inapposite to the legal and factual circumstances at issue here. In *Lopez*, the prosecution believed that its witness was going to testify differently from his preliminary examination

testimony. *Lopez*, 316 Mich App at 709. Therefore, the prosecution warned the witness, before he was actually called to testify, that if he lied on the stand, he would be charged with perjury and possibly face life in prison. *Id*. at 709-710. As a result of the prosecutor's warning, the witness invoked his Fifth Amendment right against self-incrimination, and the prosecution sought to introduce the witness's preliminary examination testimony pursuant to the hearsay exception under MRE 804(1) involving unavailable witnesses. *Id*. at 711.

This Court held that the "prosecutor's statements exceeded mere advisement, and crossed into the realm of threat and intimidation." *Id*. at 720. The Court highlighted that "the prosecutor lacked any reasonable basis to suspect that [the witness] would lie on the witness stand," *id*. at 723, and stated that the better avenue would have been to request the trial court to exercise its discretion to warn the witness of the ramifications of testifying untruthfully, *id*. at 720. Instead, the prosecutor's preemptive error denied the defendant his right to confront the witnesses against him, which, in turn, violated his right to a fair trial, and a new trial was warranted. *Id*. at 724-725.

The instant case is distinguishable from *Lopez*. Unlike the witness in *Lopez*, Williams had already taken the stand and had started to testify at odds with his earlier version of events when the prosecution informed the Court and Williams of the consequences of that testimony. Further, unlike *Lopez*, Williams did not invoke his Fifth Amendment right, and, after consulting with appointed counsel, opted to continue his testimony in accordance with the agreement for special consideration. Accordingly, the main concern present in *Lopez*—that the prosecution's preemptive conduct caused the absence of a witness—is not present here. In the end, Williams already knew that if he testified inconsistently with the agreement he would face a charge and possible conviction for first-degree murder.

There has never been a blanket prohibition against informing a witness of the potential consequences of making false statements. See *People v Layher*, 238 Mich App 573, 587; 607 NW2d 91 (1999). Indeed, Williams's own conduct in this case left the prosecution with little alternative but to advise Williams of his obligations under the agreement. That the prosecutor did so outside of the presence of the jury, and the trial court granted Williams time to consult with an attorney, further demonstrate that the situation was properly handled below. Moreover, even if we were inclined to find the prosecutor's statements improper, defendant would still be entitled to no relief. Four witnesses testified that defendant admitted he shot Collins, and a fifth witness actually observed the criminal act. Even had Williams testified that he did not witness defendant shoot Collins, the overwhelming evidence would still support the jury's verdict. Defendant has proven no error, yet alone an error affecting his substantial rights, and is not entitled to relief.

*Defense Counsel Was Not Ineffective*. Defendant also argues the he was denied his Sixth Amendment right to the effective assistance of counsel because his attorney failed to cross-examine Williams about an inconsistency in his testimony. We review defendant's unpreserved claim of ineffective assistance of counsel for errors apparent on the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

"To establish a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the

defense." *People v Riley (After Remand)*, 468 Mich 135, 140; 659 NW2d 611 (2003). Concerning the first prong, counsel's performance is deficient when it falls below an objective standard of reasonableness under prevailing professional norms. *Id*. Moreover, a defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Regarding the second prong, a defendant is prejudiced if there is a reasonable probability that, "but for defense counsel's errors, the result of the proceeding would have been different." *People v Heft*, 299 Mich App 69, 81; 829 NW2d 266 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004).

At trial, the prosecution asked Williams why he eventually told police the truth despite originally denying the fact that defendant shot Collins. The following exchange occurred:

> [*Prosecutor*]: Why did you not tell the jury -- why did you not tell the police the correct story of what happened first?
>
> [*Williams*]: It was just an instinct I guess not to just tell them. The only reason I basically came true was because I found out [Stovall] and [Moultrie] and [Perkins] had already got on the stand and told them what happened anyway.
>
> *Prosecutor*: So you believe other people had told the police what had really happened?
>
> *Williams*: Yeah, they had already told. I had got a phone call.
>
> *Prosecutor*: And then based on you believing that the police knew what had already happened, that's when you decided to tell the police the truth?
>
> *Williams*: Yes.

Defendant claims that this testimony is inconsistent and that defense counsel should have revealed that inconsistency through cross-examination. According to defendant, Stovall, Moultrie, and Perkins, did not tell the police that defendant was the shooter until after Williams confessed, and therefore Williams could not have been motivated to tell the truth based on their stories.

Defendant has failed to show an actual inconsistency in Williams's testimony. First, defendant has not proven when Williams confessed to police in relation to when the three witnesses provided their statements. Second, defendant mischaracterizes Williams's testimony. Williams testified that he *believed* that the three witnesses had already revealed the truth by the time of his confession. Whether the three witnesses actually had made their statements by the time Williams confessed does not detract from Williams's belief that the truth had already come out, and does not impeach Williams's motivation to tell the truth.

Moreover, we must note, again, that four witnesses testified that defendant admitted to the crime, and a fifth witness testified that he actually observed defendant's commission of the crime in progress. Accordingly, even had an inconsistency been revealed in Williams's

-4-

testimony, the overwhelming evidence would still support the jury's verdict. Defendant has not shown his counsel was deficient nor has he shown that any deficient performance affected the outcome of the proceedings.

Affirmed.

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Brock A. Swartzle