*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JARRIEL LAROY REED,

        Defendant-Appellant.

UNPUBLISHED
February 13, 2020

No. 327639
Saginaw Circuit Court
LC No. 14-040316-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

JARRIEL LAROY REED,

        Defendant-Appellee.

No. 350189
Saginaw Circuit Court
LC No. 14-040316-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

DEVAUN LAROY LOPEZ,

        Defendant-Appellee.

No. 350190
Saginaw Circuit Court
LC No. 14-040317-FC

Before: CAMERON, P.J., and SHAPIRO and SWARTZLE, JJ.

PER CURIAM.

On remand, the trial court held an evidentiary hearing and subsequently explained that both defendants should be granted a new trial because the prosecutor intentionally procured the unavailability of a key witness. We discern no clear error in the trial court's factual findings and no abuse of discretion in its conclusion that defendants should be granted a new trial. Accordingly, we vacate both defendants' convictions and remand for a new trial.

## I. BACKGROUND

These are consolidated cases involving two defendants, Jarriel Laroy Reed and Devaun Laroy Lopez. A prior panel of this Court provided a detailed history of these cases in *People v Lopez*, 316 Mich App 704; 892 NW2d 493 (2016), rev'd 501 Mich 1044 (2018). In Docket No. 327639, Reed appeals by right. In Docket Nos. 350189 and 350190, the prosecutor appeals by leave granted.

In their earlier respective appeals by right, both defendants argued that the prosecutor made threatening remarks that caused a key witness, Dennis Hoskins, to become unavailable.[1] Hoskins had originally testified at defendants' preliminary examination, claiming that they had told him about their involvement in the victim's murder. At the time of the preliminary examination, Hoskins had been charged with a felony arising from a separate incident, and he had entered into an agreement with the prosecutor to testify against defendants in this case. Hoskins later expressed indecision about whether he would testify at defendants' trial. Moreover, sometime prior to the trial, Hoskins told Reed's attorney that he had given false testimony at the preliminary examination because he was angry with defendants. Hoskins eventually informed his own attorney that he would not testify at the trial, and this was communicated to the prosecutor.

The prosecutor then moved to declare Hoskins unavailable under MRE 804 and to use his preliminary examination testimony at defendants' trial. On the day of the motion hearing but before the hearing was held, the prosecutor and attorneys for both defendants met with Hoskins, despite the fact that Hoskins's attorney was unaware of this meeting and never gave his consent to it. At that meeting, Reed's attorney raised the issue of perjury. Based on the prior conversation in which Hoskins admitted that he had lied at the preliminary examination, Reed's attorney informed Hoskins that, if Hoskins testified at trial contrary to his preliminary-examination testimony, he could expose himself to perjury charges. The prosecutor then told Hoskins that— not only would he face perjury charges—but he could receive up to life in prison if convicted of perjury. Hoskins agreed to testify at defendants' trial, and the prosecutor withdrew his motion to declare Hoskins unavailable under MRE 804.[2]

On the first day of defendants' trial, the prosecutor again moved to declare Hoskins unavailable because of concern that Hoskins had again decided not to testify at trial. The

---

[1] Defendant Reed raised three additional issues. In light of our conclusion that defendants are entitled to a new trial, we need not address these additional issues.

[2] Based on these facts, it is indisputable that defendants' counsel knew about the prosecutor's conduct before the trial—they were, in fact, witnesses to that conduct because they attended the pretrial meeting at which it occurred.

-2-

prosecutor also revealed that, while being transported to and from lockup, Hoskins told defendants something to the effect of, "I've got you covered, bro." The prosecutor expressed concern that Hoskins was going to testify contrary to his preliminary-examination testimony in an overt attempt to aid defendants. The prosecutor also expressed concern about Hoskins's allegation that, during their meeting on the day of the motion hearing, he had threatened Hoskins with life in prison. The trial court tabled the issue until Hoskins was called as a witness.

On the third day of trial, outside the jury's presence, Hoskins declared his intention to invoke his Fifth-Amendment right not to testify. His attorney stated that defendant made this decision because of perjury concerns. Hoskins, without any prompting, stated, "The prosecutor's [sic] told me—they threatened me with life in prison." The trial court decided that Hoskins, by invoking the Fifth Amendment, was unavailable under MRE 804 and the prosecutor could, therefore, admit his preliminary-examination testimony. Defendants' attorneys reluctantly agreed without further objection. At the end of the trial, however, they moved to strike the preliminary-examination testimony on the ground that the prosecutor's threatening remarks had caused Hoskins's unavailability. Although the trial court found that Hoskins felt threatened by the prosecutor's comments regarding life in prison for perjury, it nonetheless denied defendants' motion.

In *Lopez*, 316 Mich App at 704, a prior panel of this Court held that (1) the prosecutor's threatening remarks caused Hoskins to decide not to testify at trial, (2) because Hoskins was made unavailable by the prosecutor's actions, he was erroneously declared unavailable under MRE 804, and (3) the trial court erroneously admitted Hoskins's preliminary examination testimony under MRE 804. The prosecutor appealed this Court's decision to our Supreme Court, which reversed. The Supreme Court held that, although the trial court had found that Hoskins was "unavailable because he felt threatened by the prosecutor," the trial court had not determined whether the "prosecutor intended to cause the declarant to refuse to testify when engaging in that conduct." *People v Lopez*, 501 Mich 1044 (2018). The Court stated that

> [i]n finding error requiring a new trial, the Court of Appeals determined that the trial court record established that the prosecutor's conduct procured the unavailability of the witness and could not be justified. But that is a factual determination that should first be decided by the trial court, and it fails to address the text of the rule. [*Id*.]

The Court remanded with instructions for the trial court to make the factual determination regarding the prosecutor's intent. *Id*. In light of our Supreme Court's order, this Court also remanded Reed's case to the trial court for the same determination. On remand, the trial court held an evidentiary hearing and heard testimony from the prosecutor, Hoskins, Hoskins's attorney, Reed's and Lopez's attorneys, and two deputies. After taking testimony, the trial court issued a written opinion detailing its factual findings and conclusions of law.

The trial court found that the prosecutor had done more than simply explain to Hoskins the consequences for perjury. Rather, the trial court concluded that the prosecutor had told Hoskins in an "aggressive and threatening manner" that he could receive life in prison, and he did so without Hoskins's attorney being present or having given his consent for the meeting. The trial court noted that the prosecutor's remarks to Hoskins failed to take into account the fact that, if Hoskins had

-3-

lied at the preliminary examination, his telling the truth at the trial would not be perjury. Rather, his testimony at the preliminary examination would have been perjury, and this would have potentially exposed him to up to 15 years in prison, not life in prison as the prosecutor stated.[3] The trial court concluded that the prosecutor

> intended to make Hoskins feel that if he was going to testify inconsistent with his preliminary examination testimony, he would get life in prison. If Hoskins' testimony at the preliminary examination was inaccurate in anyway, which we know it was in some respects, it would have resulted in Hoskins perjuring himself at trial.

The trial court further found that portions of the prosecutor's testimony conflicted with prior statements he made at Hoskins's evidentiary hearing.

The trial court likened the case to *Webb v Texas*, 409 US 95; 93 S Ct 351; 34 L Ed 2d 330 (1972), finding that the prosecutor "occupied a position of immediate power over Hoskins regarding his testimony" and that the prosecutor's

> threatening remarks, directed only at the single witness for the defense, effectively drove that witness off the stand, and allowed [the prosecutor] to have the jury consider [Hoskins's] preliminary exam testimony (where he implicated the defendants) without also exposing the jury to that witness' proposed testimony that his previous statements implicating the defendants were lies, or at least inconsistent with his proposed testimony at trial.

The trial court found that portions of Hoskins's preliminary examination testimony were obviously false and that the prosecutor knew or should have known of these falsities. The trial court found that, despite this, the prosecutor had stated his belief that the preliminary examination testimony was the truth. Moreover, the trial court found that, despite the falsities, the prosecutor wanted Hoskins to testify in keeping with his preliminary examination testimony and, after his being declared unavailable, had sought the admission of this testimony without any regard for the falsities.

The trial court concluded that the prosecutor's threatening remarks were "made, in part at least, with the intent of preventing Hoskins from testifying, causing his 'unavailability.' " The trial court noted that defendants' case was a "close case that rose or fell on whether the jury believed the exam testimony" of Hoskins and that, if Hoskins had testified at trial, this likely could

---

[3] MCL 750.422 provides:

> Any person who, being lawfully required to depose the truth in any proceeding in a court of justice, shall commit perjury shall be guilty of a felony, punishable, if such perjury was committed on the trial of an indictment for a capital crime, by imprisonment in the state prison for life, or any term of years, and if committed in any other case, by imprisonment in the state prison for not more than 15 years.

have swayed the jury in favor of defendants. The trial court found that "[m]any other witnesses provided conflicting or unreliable eyewitness testimony." It noted that the inconsistency in Hoskins's testimony was a "jury question" and that the jury should have been informed of it. Accordingly, the trial court found that the introduction of Hoskins's testimony from the preliminary examination was not harmless error. The trial court determined that defendants' convictions should be vacated and that they should be granted a new trial.

This appeal followed.

## II. ANALYSIS

### A. STANDARD OF REVIEW

We review a trial court's decision to admit or preclude evidence for abuse of discretion. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010). A court abuses its discretion when its decision falls outside the range of principled outcomes. *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013). But when "the decision involves a preliminary question of law, which is whether a rule of evidence precludes admissibility, the question is reviewed de novo." *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003). We review for clear error the trial court's findings of fact, MCR 2.613(C),[4] and review de novo the interpretation of court rules, *People v Comer*, 500 Mich 278, 287; 901 NW2d 553 (2017). Clear error occurs when the reviewing court is left with a definite and firm conviction that a mistake has been made. *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008).

### B. UNAVAILABLE WITNESS

The prosecutor argues that the trial court mischaracterized the record and testimony from the evidentiary hearing and that the only evidence regarding prosecutorial conduct came from Hoskins, an unreliable witness. The prosecutor argues that the remarks to Hoskins during the pretrial meeting were appropriate given the prosecutor's belief that the preliminary examination testimony was true and that any deviation at trial would be a lie that would necessarily expose Hoskins to life in prison under MCL 750.422. The prosecutor further maintains that, in contrast to the trial court's findings, the entirety of the evidence did not show that the remarks were made to Hoskins *for the purpose* of causing his unavailability. We conclude that the trial court's factual findings were not clearly erroneous and that its conclusions are well-supported by the record.

Generally, hearsay evidence is excluded under MRE 802, but the rule contains numerous exceptions if the declarant is unavailable as a witness. Relevant to this appeal is the exception in MRE 804(b)(1), which permits the admission of "[t]estimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." In other words, former testimony is admissible under MRE 804(b)(1) "as long as

---

[4] See MCR 6.001(D) (stating that the civil rules apply to criminal proceedings except under inapplicable exceptions).

-5-

the witness is unavailable for trial and was subject to cross-examination during the prior testimony." *People v Garland*, 286 Mich App 1, 7; 777 NW2d 732 (2009).

A witness who asserts a Fifth-Amendment privilege against self-incrimination is generally considered "unavailable" under MRE 804. *People v Meredith*, 459 Mich 62, 65-66; 586 NW2d 538 (1998). Such a witness will not be declared unavailable, however, if the witness's "exemption, refusal, claim of lack of memory, inability, or absence is *due to the procurement or wrongdoing of the proponent of a statement for the purpose of preventing the witness from attending or testifying.*" MRE 804(a)(5) (emphasis added). This Court has previously held that the prosecutor bears the burden to show that "the witness whose prior recorded testimony is being offered is, in fact, 'unavailable' and that the prosecution has not, either intentionally or negligently, contributed to making the witness unavailable." *People v McIntosh*, 142 Mich App 314, 327; 370 NW2d 337 (1985).

In *Webb*, 409 US at 98, the United States Supreme Court held that a trial court's "threatening remarks, directed only at the single witness for the defense, effectively drove that witness off the stand" and violated the defendant's due-process rights under the Fourteenth Amendment. In that case, after the prosecution had rested, the trial court, during a recess, called in the defendant's only witness, who was serving a prison sentence. *Id*. at 95. The trial court made the following remarks:

> Now you have been called down as a witness in this case by the Defendant. It is the Court's duty to admonish you that you don't have to testify, that anything you say can and will be used against you. If you take the witness stand and lie under oath, the Court will personally see that your case goes to the grand jury and you will be indicted for perjury and the liklihood (sic) is that you would get convicted of perjury and that it would be stacked onto what you have already got, so that is the matter you have got to make up your mind on. If you get on the witness stand and lie, it is probably going to mean several years and at least more time that you are going to have to serve. It will also be held against you in the penitentiary when you're up for parole and the Court wants you to thoroughly understand the chances you're taking by getting on that witness stand under oath. You may tell the truth and if you do, that is all right, but if you lie you can get into real trouble. The court wants you to know that. You don't owe anybody anything to testify and it must be done freely and voluntarily and with the thorough understanding that you know the hazard you are taking. [*Id*. at 95-96 (quotation marks omitted).]

In holding that the trial court's actions were improper, the Supreme Court reasoned:

> The trial judge gratuitously singled out this one witness for a lengthy admonition on the dangers of perjury. But the judge did not stop at warning the witness of his right to refuse to testify and of the necessity to tell the truth. Instead, the judge implied that he expected [the witness] to lie, and went on to assure him that if he lied, he would be prosecuted and probably convicted for perjury, that the sentence for that conviction would be added on to his present sentence, and that the result would be to impair his chances for parole. At least some of these threats may

have been beyond the power of this judge to carry out. Yet, in light of the great disparity between the posture of the presiding judge and that of a witness in these circumstances, the unnecessarily strong terms used by the judge could well have exerted such duress on the witness' mind as to preclude him from making a free and voluntary choice whether or not to testify. [*Id*. at 97-98.]

Similarly, in *People v Pena*, 383 Mich 402; 175 NW2d 767 (1970), our Supreme Court set aside the defendant's conviction because of letters that the prosecutor sent to the defendant's proposed witnesses. Before trial, the prosecutor sent letters to three of the defendant's proposed witnesses before trial. In those letters, the prosecutor warned the witnesses that any person who commits perjury is guilty of a felony punishable by life in prison. *Id*. at 405 (opinion by T. G. KAVANAGH, J.) In holding that this was improper, the authoring justice reasoned:

> The impact of the prosecutor's official letter talking about life imprisonment . . . could scarcely be calculated to be anything but terrifying.
>
> For the court to conclude that the defendant could have a fair trial without directly questioning the witnesses, without ascertaining the effect of the letter and without attempting to reassure them, if possible, is not acceptable. [*Id*. at 406.]

Justice T. G. KAVANAGH further reasoned that, although a prosecutor could impeach a witness, he could not intimidate a witness outside of court. *Id*. He concluded, "Because we are convinced that the court alone might have corrected the prosecutor's actions, but did not, we must set aside the conviction." *Id*. Two other justices, Justice KELLY and T. M. KAVANAGH concurred. See *id*. at 406. Justice ADAMS wrote separately and stated:

> I would remand to the trial court for a determination by that court as to whether or not the prosecutor's letter did intimidate the witnesses. If the court finds it did, the court should grant a new trial and the court's efforts to undo the damage upon such retrial should appear of record. If the court finds that no intimidation took place, the court should so find, stating its reasons for the finding, and a new trial should be denied. [*Id*. at 406-407 (ADAMS, J., concurring).]

See also *People v Crabtree*, 87 Mich App 722, 724-726; 276 NW2d 478 (1979) (reversing and remanding for a new trial because, among other errors, the victim claimed that the prosecutor had informed her that he would bring perjury charges against her if she changed her testimony from that of the preliminary examination).

In the present case, the trial court noted that the prosecutor's testimony about the unimportance of Hoskins as a witness conflicted with his statements made at Hoskins's sentencing hearing. At sentencing, the prosecutor referred to Hoskins as his "star witness" and stated that his decision not to testify had placed the prosecutor in a "very precarious position." The prosecutor stated that Hoskins would have "sabotage[d]" and "torpedo[ed]" the prosecutor's case "had some things not fallen in our favor such as *getting our motion granted to declare him unavailable* and . . . the Court allowing us to read in his preliminary examination testimony." This directly conflicted with the prosecutor's testimony on remand that he wanted Hoskins to testify, even if he did so for the defense, and that his testimony mattered little to the case.

The trial court found that the prosecutor did not merely explain the consequences of perjury to Hoskins but, instead, told Hoskins in an aggressive and threatening manner that he could face life in prison if his trial testimony deviated from his preliminary examination testimony. Attorneys for both defendants described the prosecutor's remarks as threatening, aggressive, and matter-of-fact, and not as a mere explanation of Hoskins's rights. Hoskins testified similarly. Moreover, during the first day of the trial, Reed's attorney had stated to the trial court that he believed the prosecutor's statements were made "merely and purely to scare" Hoskins, and Lopez's attorney agreed. The prosecutor himself did not dispute that he told Hoskins he could face life in prison if his trial testimony deviated from the preliminary examination. This, as the trial court noted on remand, was not a complete statement of the law.

MCL 750.422 provides that perjury, if it occurred in "*the trial* of an indictment for a capital crime," is punishable by up to life in prison; however, "if committed *in any other case*, [it is punishable] by imprisonment in the state prison *for not more than 15 years*." (Emphasis added). In other words, life imprisonment is the maximum penalty only if the perjury occurs at the *trial* for a capital crime, e.g., first-degree murder. In all other instances, it is punishable by not more than 15 years in prison. The trial court noted this important distinction in the perjury statute, and found that the prosecutor could not have known for certain that Hoskins had *not* lied at his preliminary examination. If Hoskins had lied at the preliminary examination and wished to correct himself at the trial, he would have faced a potential penalty of only 15 years for perjury. There is no indication that the prosecutor explained this difference; he simply told Hoskins that he could face life imprisonment if his trial testimony differed from the preliminary examination.

Although the prosecutor claimed that he and the other attorneys had received permission to speak to Hoskins at the meeting in which the remarks at issue were made, Hoskins's attorney testified that he was unaware of the meeting and never gave his permission. If so, the prosecutor's strong remarks to Hoskins, which were not a complete description of the law, were made without any support from Hoskins's attorney and by a figure with power over bringing criminal charges against Hoskins.

The prosecutor argues lack of knowledge until *after* the trial that Hoskins planned to recant his preliminary-examination testimony. Therefore, he argues that the procurement of Hoskins's unavailability could not possibly have been intentional. As previously discussed, the prosecutor met with Hoskins and informed him that he could be charged with perjury and face life imprisonment *if his trial testimony differed from his preliminary examination testimony*. During the trial, the prosecutor explained to the trial court his concern that Hoskins was going to offer contradicting testimony at the trial. In other words, contrary to the prosecutor's arguments on appeal, he at the very least suspected that Hoskins was going to deviate in his trial testimony. This was enough to prompt the prosecutor to confront Hoskins, without Hoskins's attorney being present or granting his consent, and to inform him that he could face life in prison if his trial testimony changed. The prosecutor had knowledge that Hoskins was possibly going to testify contrary to his preliminary examination testimony. Doing so would have "torpedoed" the prosecutor's case, which he himself admitted at Hoskins's sentencing hearing.

The trial court found, and we see no reason to disagree, that the prosecutor's comments were similar to the judge's remarks in *Webb* in that both went beyond merely explaining the consequences of perjury and were said in an aggressive and threatening manner. Moreover, *Pena*

demonstrates that merely sending a letter outlining the perjury statute is likely improper, see *Pena*, 383 Mich at 405-407, and the prosecutor's remarks in this case went far beyond that line, given that he (1) personally met with Hoskins without permission from Hoskins's attorney, (2) used a threatening and aggressive tone, and (3) gave an improper statement of the law.

From the available circumstances, the trial court did not clearly err by finding that the prosecutor made aggressive and threatening statements about life imprisonment in an attempt to "make Hoskins feel that if he was going to testify inconsistent with his preliminary examination testimony, he would get life in prison." From this, the trial court reasonably concluded that the prosecutor intended to scare Hoskins into either testifying as he did at the preliminary examination or choosing not to testify for fear of the consequences, thereby making himself unavailable and allowing the prosecutor to use his preliminary examination testimony instead. Such a finding prohibits the application of MRE 804 and the admission of Hoskins's preliminary examination testimony.

The prosecutor also argues on appeal that there is no indication that Hoskins was going to testify for the defense, i.e., that defendants were going to call him as a witness. As defendants point out, however, it matters little whether Hoskins testified for the prosecution or defense because Hoskins planned to testify differently regardless of which side called him as a witness. Hoskins stated at the evidentiary hearing that he had lied at the preliminary examination and that he would have testified differently at trial. This supports the conclusion that Hoskins's testimony would have benefited defendants regardless of who called him to testify.

## III. CONCLUSION

Based on our thorough review of the record, we conclude that the trial court did not err by concluding that the prosecutor's remarks to Hoskins were meant in part to procure his unavailability. Furthermore, we agree with the trial court's determination that the declaration of Hoskins as an unavailable witness and the admission of his preliminary-examination testimony was not harmless error. As we stated in our prior decision, the prosecutor's evidence "was thin at best." *Lopez*, 316 Mich App at 724. There was no evidence, other than Hoskins's testimony, directly tying defendants to the murder. Eyewitnesses gave conflicting accounts, and none placed defendants at the murder scene. The prosecutor himself stated in his closing remarks that "what this case boils down to is the testimony of Dennis Hoskins." The error cannot, therefore, be ignored.

We vacate defendants' convictions and remand for a new trial. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Douglas B. Shapiro
/s/ Brock A. Swartzle